**HATLEIGH CORPORATION, Plaintiff,**

v.

**LANE BRYANT, INC., Defendant.**

Court of Chancery of Delaware,
New Castle County.

Submitted Jan. 5, 1981.
Decided Feb. 5, 1981.

R. Franklin Balotti, and Samuel A. Nolen, Richards, Layton & Finger, Wilmington, for plaintiff.

A. Gilchrist Sparks, III, and Lawrence A. Hamermesh, Morris, Nichols, Arsht & Tunnell, Wilmington, and Weil, Gotshal & Manges, New York City, for defendant.

HARTNETT, Vice Chancellor.

Plaintiff Hatleigh Corporation ("Hatleigh") filed a demand, pursuant to 8 *Del.C.* § 220, to inspect and copy a list of the stockholders of defendant Lane Bryant, Inc. —a Delaware corporation. Lane Bryant resisted the demand and this is my decision after trial in favor of Hatleigh.

I

Hatleigh is the record holder of 1,000 shares of common stock of Lane Bryant, Inc. and owns beneficially an additional 697,300 shares—or 15.3%—of the outstanding shares. On November 5, 1980, acting on behalf of Hatleigh, Mr. Marshall Jacobs requested Lane Bryant, Inc. to provide Hatleigh with a stockholder list. The demand stated that it was made:

"For the purpose of communicating with Lane's stockholders on matters relating to mutual interest as stockholders, to communicate with Lane's stockholders in order to influence the policy of Lane's management, to inquire of the stockholders as to their opinions of the management of Lane and whether they would support Hatleigh's efforts to seek representation on Lane's Board of Directors, to solicit the proxies of other stockholders in connection with the next annual meeting of stockholders, and more specifically to obtain the list to enable solicitation of proxies in connection with the election of members to the Board of Directors of Lane."

8 *Del.C.* § 220 provides in part:

"(b) Any stockholder, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose the corporation's stock ledger, a list of its stockholders .... and to make copies or extracts therefrom. A proper purpose shall mean a purpose reasonably related to such person's interest as a stockholder .....

(c) .... The Court of Chancery is hereby vested with the exclusive jurisdiction to determine whether or not the person seeking inspection is entitled to the inspection sought .... Where the stock-

holder seeks to inspect the corporation's stock ledger or list of stockholders and he has complied with the provisions of this section respecting the form and manner of making demand for inspection of such documents, the burden of proof shall be upon the corporation to establish that the inspection he seeks is for an improper purpose . . . ."

It is conceded by Lane Bryant that Hatleigh's demand technically complies with the requirements of 8 *Del.C.* § 220 and that one of the stated purposes—the solicitation of stockholder proxies—is a proper purpose under the statute. Lane Bryant contends, however, that the demand was not bona fide because Hatleigh had not—on November 5, 1980—formed an intention to actually solicit proxies but was seeking the list of stockholders for a different purpose. Lane Bryant points out that a previous demand of Hatleigh—on August 7, 1980—for the same stockholder list was denied by me on October 20, 1980. At that time I found, after trial, that the August demand did not state that Hatleigh had an intention to seek proxies, that Hatleigh had not, in August, formed an intention to seek proxies, and that its stated purposes were inadequate. I held, therefore, that the August demand did not set forth a proper purpose to justify access to the stockholder list. *Weisman v. Western Pacific Indus., Inc.,* Del.Ch., 344 A.2d 267 (1975); *Northwest Indus., Inc. v. B. F. Goodrich Co.,* Del.Super., 260 A.2d 428 (1969). And I further held that Hatleigh, at trial, had not corrected the defect by showing that a proper purpose existed. *Henshaw v. American Cement Corp.,* Del.Ch., 252 A.2d 125 (1969).

At the most recent trial Hatleigh showed that its Board of Directors decided on November 5, 1980, to seek stockholder proxies for use at the next annual stockholders meeting of Lane Bryant. Testimony was also adduced which showed that on October 8, 1980, a final effort was made to compromise Hatleigh's differences with Lane Bryant but was a failure. This failure, it is contended, acted as the final catalyst which caused the directors of Hatleigh to form an intention to seek the proxies.

Lane Bryant, however, points out that the decision of the Board of Directors of Hatleigh to seek proxies occurred only sixteen days after my October 20, 1980, opinion and the action was taken only after the Board was advised that it would be necessary to undertake a proxy solicitation in order to secure the desired stockholder list. It was also shown that a proxy soliciting firm was retained by Hatleigh only two days before the date originally scheduled for this trial.

After reviewing all the evidence, however, I am convinced that Hatleigh's November 5, 1980, decision to solicit proxies was bona fide and the fact that my October opinion may have contributed to that decision is of little relevance. I also find that Hatleigh's failure to retain a proxy soliciting firm until two days before trial does not show that it had not formed a bona fide intention to solicit proxies at the time of its demand for a stockholder list.

## II

Lane Bryant also claims that the most recent demand for a stockholder list was invalid because it was premature. It was made on November 5, 1980, and the next annual meeting is not scheduled until May of 1981. The lack of imminence of a stockholders meeting is, however, irrelevant to the issue of whether a stockholder has a right to inspect and copy a stockholder list if a proper purpose for the inspection exists. *Skoglund v. Ormand Indus., Inc.,* Del.Ch., 372 A.2d 204 (1976); *Skouras v. Admiralty Enterprises, Inc.,* Del.Ch., 386 A.2d 674 (1978); *Credit Bureau of St. Paul, Inc. v. Credit Bureau Reports, Inc.,* Del.Ch., 290 A.2d 689 (1972), aff'd, Del.Super., 290 A.2d 691 (1972). If a demand for the inspection of a stockholder list is made for the purpose of soliciting proxies and there is a bona fide intent to solicit proxies at the time of the demand, there is no reason why the demand must be made within a certain number of days of the next scheduled stockholders meeting. The statute imposes no such requirement and it is difficult to perceive how

prejudice can result from the list being made available at an early date instead of on the eve of an annual meeting. If the time of the demand has any relevance it is only to show the lack of a bona fide intent to solicit proxies but I am convinced that Hatleigh had a bona fide intent to solicit stockholder proxies for the next annual meeting at the time it made its November 5, 1980, demand.

In my October 20, 1980, opinion denying the earlier request of Hatleigh for the stockholder list of Lane Bryant, I did state that the August demand was premature. *Hatleigh Corp. v. Lane Bryant, Inc.*, Del. Ch., unreported, (C.A. # 6259–NC, Oct. 20, 1980). In that opinion I cited *AAR Corp. v. Brooks & Perkins, Inc.*, Del.Ch., unreported, (C.A. # 6222–NC, Oct. 22, 1980). Neither of these opinions, however, holds that an otherwise proper demand for a stock list is premature merely because it was made several months prior to the next annual meeting. In both of those cases the demand was premature only because the stockholder had not formed a bona fide intent to seek the stockholder list at the time of the demand.

The claim of Lane Bryant that the proxy solicitation has not yet received clearance from the Securities and Exchange Commission is irrelevant. *Loew's Theatres, Inc. v. Commercial Credit Co.*, Del.Ch., 243 A.2d 78 (1968); *Mite Corporation v. Heli-Coil Corporation*, Del.Ch., 256 A.2d 855 (1969).

### III

■ Lane Bryant's claim that Hatleigh's November 5, 1980, demand for an inspection of the stockholder list, now before the Court, is barred by the doctrine of *res judicata* is without merit. As Lane Bryant concedes, if there has been any change of circumstances since the August demand, then the doctrine does not apply. There has been such a change: Hatleigh has made a new demand and it has formed a bona fide intention to solicit proxies, an intention which was not present at the time of the August demand.

I therefore find that Hatleigh is entitled to inspect and copy the list of stockholders of Lane Bryant upon reasonable terms and conditions.

### IV

■ Having decided that Hatleigh is entitled to a reasonable inspection of the list of stockholders of Lane Bryant, a question arises as to the scope of the inspection. A number of shares of Lane Bryant are listed on the books of the corporation as being held by "CEDE & CO." This denotes a recognized central certificate depository system whereby various brokerage firms hold stock that is actually owned by their customers in the name of CEDE & CO. or in the name of other similar firms organized to hold shares of stock for others. Lane Bryant claims that it has no obligation to furnish Hatleigh with a breakdown of the CEDE & CO. listings to show the names of the various brokerage firms holding Lane Bryant stock for clients in that name. Vice Chancellor Brown recently addressed this issue in the unreported case of *Giovanini v. Horizon Corp.*, Del.Ch., (C.A. # 5961–NC, Sept. 12, 1979). He stated:

"Evidence was offered as to the workings of CEDE & CO. which is the name utilized by Depository Trust Company to hold shares held by it for others. Depository Trust Company is an association of more than 200 brokerage houses and financial institutions which was formed for the purpose of holding shares held in street name for the beneficial interest of customers of the brokerage firms and financial institutions. In other words, the name "CEDE & Co." appearing on the corporate stock ledger is thrice removed from the true beneficial owner. The brokerage house holds the stock for the benefit of its customer, but it holds title through the Depository Trust Company which in turn uses the name CEDE & Co. for this purpose. This is done, as I understand it, for the benefit of those firms participating in the Depository Trust Company so as to simplify their stock transfer transactions on behalf of their customers.

This mechanism of convenience for the brokerage firms, however, prevents the stock ledger from revealing to one examining it just which brokerage firms hold shares and the number of shares held by each. This information, or "breakdown", of shares can be provided to the corporation at its request. Again, through the wonders of modern computer technology, this can apparently be accomplished in a matter of minutes. When the breakdown is disclosed the identity of the brokerage firms holding stock under the name of "CEDE & Co.", can be learned and contact can then be made with them in order to ascertain the number of beneficial owners on whose behalf they hold stock in street name so that a proper amount of informational materials may then be forwarded to the brokerage firms for distribution to the beneficial owners. Plaintiff seeks this "breakdown" list as to CEDE in order that he too may get his proxy solicitation materials into the hands of the beneficial owners in ample time for the annual meeting.

The question was addressed to some extent in *Bear, Stearns & Co. v. Pabst Brewing Company*, Del.Ch., unreported, C.A.No.5456, N.C. (November 25, 1977). There the request for the CEDE breakdown was refused. However, it was expressly so held because of a lack of evidence. It was also observed there that if the list of stockholders maintained by the corporation as of a specified date included such a breakdown of broker-holders, then it should be furnished to a stockholder seeking a list for a proper purpose under § 220 so as to place him on a par with the corporation. Also in that case, the list was being sought for the purpose of making a tender offer; it was not being sought in the context of a race to meet an established deadline for a meeting of shareholders as is the situation here. Thus, I do not feel that the ruling in *Bear, Stearns* mandates a denial of the CEDE breakdowns. Since the evidence here shows that such a breakdown is readily available to the corporation for the purpose of making its contact with its

shareholders, then I feel that such information should be made available to the plaintiff forthwith so that his list of stockholders for his proper purpose of soliciting their proxies is at least equivalent, in this aspect, with the list available to the corporation for the same purpose.

As to the magnetic computer tape available from the transfer agent, it appears that there is precedent for requiring the corporation to authorize its delivery to a § 220 plaintiff. It was done in *Tannetics, Inc. v. A. J. Industries, Inc.*, 2 Del.Corp. Law Journal 348 (1974)."

It is therefore clear that the listing of CEDE & CO. as the holder of stock of Lane Bryant is merely a method utilized by brokerage firms to hold stock for their customers and is done solely for the convenience of the brokers. A CEDE breakdown showing the names of the brokerage firms and the number of shares they hold is readily available to Lane Bryant and without it there would be no practical way for Hatleigh to learn how many copies of its proposed communication it should send to CEDE & CO. for distribution to the brokerage firms and thence to the true owners of Lane Bryant stock.

I therefore find that Hatleigh is entitled to a breakdown of the CEDE & CO. listings and other similar listings generally recognized as indicating the shares of stock are being held for brokerage firms and similar financial institutions.

V

Hatleigh also seeks certain other materials relating to the stockholder list of Lane Bryant which are available to Lane Bryant such as magnetic computer tape and daily transfer sheets reflecting transactions in Lane Bryant stock.

■ Once having established a proper purpose, a stockholder is entitled to the same lists and data relating to stockholders as is available to the corporation. See *Lerman v. Diagnostic Data, Inc.*, Del.Ch., unreported, (C.A. # 6233–NC, Aug. 11, 1980) and *Cargill, Inc. v. Missouri-Portland Cement Co.*, Del.Ch., unreported (C.A. # 4583–NC, Sept. 11, 1974). To hold other-

wise would be to give the corporation an unfair advantage in a proxy solicitation battle. The best interest of the stockholders requires that they quickly receive all the information generated by the competing interests. Lane Bryant, however, is under no obligation to prepare for Hatleigh lists, data, or computer tapes which are not readily available to it and, of course, Hatleigh must pay any costs involved.

## VI

Because I have held that Hatleigh is entitled to an inspection of the stock list pursuant to 8 *Del.C.* § 220, it is not necessary to consider Hatleigh's argument that it is also entitled to an inspection pursuant to the By-laws of Lane Bryant.

Plaintiff may submit a proposed order.