CENERGY CORPORATION, a Nevada
corporation, Plaintiff,

v.

BRYSON OIL & GAS P.L.C., a public
limited company organized under the
laws of Northern Ireland, Defendant.

No. CV–N–87–113–ECR.

United States District Court,
D. Nevada.

April 28, 1987.

See also 657 F.Supp. 867.

Roger W. Jeppson, Woodburn, Wedge, Blakey, and Jeppson, Reno, Nev., Charles W. Schwartz, Vinson & Elkins, Houston, Tex., for plaintiff.

Will Kemp, Jones, Jones, Close & Brown, Chartered, Las Vegas, Nev., William A. Prezant, Anderson, Pearl & Prezant, Reno, Nev., Rod Phelan, Bryant C. Boren, Jr., Huges & Luce, Dallas, Tex., for defendant.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

On March 2, 1987, the defendant in this case, Bryson, filed with the plaintiff, Cenergy, a demand to inspect Cenergy's stock ledger. Bryson at that time was a beneficial owner of approximately 13% of Cenergy's shares. In this demand, Bryson stated that its purpose in securing the shareholder information was to consider mounting a proxy fight against Cenergy's incumbent management. Cenergy refused to allow Bryson access to the shareholder material, contending that such demands had to be made by record shareholders. As Bryson was only a beneficial owner, Cenergy decided not to release the stock ledger.

On March 10, 1987, Cenergy filed a declaratory relief action in this Court, seeking a declaration that its refusal to release the stock ledger was proper. Subsequently, Bryson had six percent of the outstanding Cenergy shares transferred from the nominal owner back into its own name. As it was now the record owner of six percent of Cenergy, Bryson renewed its demand for the stock ledger. Once again Cenergy refused this demand, arguing that Bryson had failed to articulate a proper purpose for access to the shareholder list. In that Bryson's demand stated that the list was needed to "consider" a possible proxy fight, Cenergy felt that Bryson had not reached the present intent to wage the proxy battle. Because of this equivocation on Bryson's part, Cenergy found that no proper purpose had been stated for release of the stock ledger.

Additionally, Bryson's demand also requested that all NOBO materials be turned over, as well as the stock ledger itself. NOBO is the shorthand designation for "non-objecting beneficial owners," and is commonly used in the cases. Bryson contends that the simple stock ledger is useless in waging a proxy fight, in that a large percentage of the shares are held by nominal holders, such as Cede & Co. In that these nominal holders have no power to execute proxies on behalf of their beneficiaries, Bryson contends that a simple list of the shareholders would be useless, as it would merely refer Bryson to a variety of nominal owners, who have no power to effect change in the management of the company. Cenergy, on the other hand, argues that a shareholder has the right to inspect the stock ledger, and nothing more.

■ Nevada substantive law applies in this diversity case. The task of this Court is to approximate state law as closely as possible. *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir.1980). Where the state's highest court has not decided the issue, the task of the federal court is to predict how the state high court would resolve it. *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir.1986).

Both parties have moved for summary judgment, and have indicated that there are no facts in dispute in this case. Additionally, both parties have waived oral argument on their motions, requesting that the Court resolve the cross-motions for summary judgment as soon as possible. On the basis of the factual record currently before the Court, and on the basis of the pleadings filed in this action, it appears that Bryson is entitled to inspect the shareholder material and that summary judgment should be entered in its favor.

## PROPER PURPOSE

NRS § 78.105(3) provides:

An inspection ... [of a stock ledger] may be denied to such stockholder or other person upon his refusal to furnish to the corporation an affidavit that such inspection is not desired for a purpose which is in the interest of a business or

object other than the business of the corporation and that he has not at any time sold or offered for sale any list of stockholders of any domestic or foreign corporation or aided or abetted any person in procuring any such record of stockholders for any such purpose.

■ NRS § 78.105(3) provides that the shareholder seeking the ledger may not refuse to supply an affidavit regarding the shareholder's purposes. On March 2, 1987, Bryson provided such an affidavit. The March 2, 1987, affidavit, however, was provided in conjunction with a request to inspect the stock ledgers which was improper in that at that time Bryson was not a shareholder which, under NRS § 78.105(2), could demand inspection. In the following weeks, Bryson changed its position such that it qualified under § 78.105(2). On March 16, 1987, Bryson again requested inspection of the stock ledgers. This time no affidavit was provided. The March 2, 1987, affidavit arguably does not support the March 16, 1987, request for inspection. The Court finds this argument to be weak. Bryson's change of position as a shareholder between March 2 and March 16 was not such that it would change Bryson's purposes in seeking the stock ledgers. The March 2, 1987, affidavit fulfills the requirement of NRS § 78.105(3).

■ Technically, however, the question of the adequacy of the March 2 affidavit need not be reached. NRS § 78.105(3) does not require an affidavit regarding purpose of inspection to accompany every shareholder request to inspect stock ledgers. That statute only provides that if a shareholder *refuses* to provide an affidavit regarding purpose, the shareholder may be denied the ledger. A fair reading of the statute is that a corporation from which a shareholder seeks a stock ledger may demand an affidavit regarding purpose. If the corporation demands an affidavit, the shareholder seeking to inspect the stock ledger may not refuse to provide one. If the shareholder does refuse, the stock ledger may be withheld.

■ There is no evidence of a demand on the part of Cenergy that Bryson produce an affidavit other than the March 2, 1987, affidavit produced. Therefore, no duty arose on the part of Bryson to further support by affidavit its request to inspect the stock ledgers.

The burden is now upon Cenergy to show that Bryson seeks to inspect the stock ledgers for an improper purpose. The Court finds that Bryson seeks the stock ledger for a proper purpose. Bryson stated its purpose as follows:

The purpose of this demand is to permit the Stockholder to consider communicating with its fellow stockholders on matters relating to their mutual interest as stockholders, and to enable the stockholder (should it determine to do so) to consider soliciting proxies from its fellow stockholders in connection with the next meeting of stockholders, including to solicit proxies with respect to the election of directors of the Company or other matters to be voted on by the Stockholders.

The cases on the subject consistently hold that proxy solicitation is a proper purpose for the inspection of stock ledgers. *See Hatleigh Corp. v. Lane Bryant, Inc.,* 428 A.2d 350 (Del.Ch.1981); *Skoglund v. Ormand Indus., Inc.,* 372 A.2d 204 (Del. Ch.1976); *Delmarmo Assoc's. v. New Jersey Eng'g & Supply Co.,* 177 N.J.Super. 15, 424 A.2d 847 (A.D.1980); *In re Application of Lopez,* 71 A.D.2d 976, 420 N.Y. S.2d 225 (1979). An intent antagonistic toward present management does not necessarily indicate an interest detrimental to the corporation itself.

■ The opinion in *Hatleigh Corp., supra,* pg. 1146 requires that, in order for proxy solicitation to be a proper purpose for the inspection of stock ledgers, the shareholder seeking the ledgers must have formed a bona fide intention to solicit proxies. Cenergy argues that Bryson had not formed such a bona fide intention when it sought the stock ledger. Cenergy points to the equivocal nature of the language in the demand by Bryson. It is true that Bryson's language was less than clear about its intention. The Court, however, may look beyond the shareholder's statement of

purpose to determine whether a shareholder had a proper purpose in seeking a stock ledger. The surrounding circumstances are relevant. *See Skoglund, supra,* pg. 1146. Notwithstanding Bryson's equivocal statement of purpose, the Court finds that Bryson had formed an intention to solicit proxies. Most significant is the fact that Bryson had retained D.F. King Co., Inc.; D.F. King is a proxy solicitation firm. *See* Affidavit of John J. Gavin, attached to the Motion for Summary judgment of Bryson Oil & Gas PLC, at page 1. Also significant is the fact that the annual shareholders' meeting was imminent when Bryson made its demand.

The Court finds that Bryson seeks to inspect the stock ledgers of Cenergy for a proper purpose, one not adverse to the interests of Cenergy. Under Nevada law, therefore, Bryson is entitled to inspect the stock ledger.

## NOBO MATERIALS

The question of exactly what materials Bryson is entitled to inspect still remains. As noted above, Bryson argues that it must have access to the NOBO materials, which would include the names and addresses of the beneficial owners of Cenergy stock, in order to wage a proxy battle. There is no doubt that this is true. Without the names and addresses of the beneficial owners of the shares, Bryson could not contact them, and therefore could not run a proxy campaign.

Cenergy does not dispute the fact that access to the NOBO materials is critical to the waging of a proxy fight. It does maintain that Nevada law restricts the insurgents' inquiry solely to the stock ledger. On balance, it appears that Bryson should be allowed access to the NOBO materials.

The Nevada Supreme Court has not ruled on this topic. Several cases from Delaware, however, are instructive. In *Shamrock Assoc's. v. Texas American Energy Corp.,* 517 A.2d 658 (Del.Ch.1986) the plaintiff had begun a proxy fight against the defendant's incumbent management. In so doing, the plaintiff made a demand for the stock ledger, and also demanded access to the NOBO list which the corpora-tion had acquired to contact its shareholders. The defendant refused to deliver the NOBO list, claiming among other things that Delaware law only required delivery of the stock ledger, and that any other material, such as a NOBO list, was merely ancillary, and need not be produced.

The Delaware court rejected this argument. In interpreting the relevant section of the Delaware Code, the court found it had repeatedly recognized that "the stock-list materials provided to a shareholder should include all of those forms of shareholder data readily available to the corporation." *Id.,* at 661. If the corporation were allowed to shield the names of the actual owners of the corporation from other shareholders, the court found, it would have an unfair advantage in the proxy solicitation battle. *Id.* (*citing Hatleigh, supra,* pg. 1146, at 354–55). By requiring the corporation to divulge all of the shareholder information in its possession, the court concluded that the goal of fairness in proxy solicitation would be effectuated. Therefore, the court ordered that the defendant allow the plaintiff access to any NOBO list which the corporation might have acquired in the course of proxy solicitation. In addition, the court impliedly held that the plaintiff would be allowed access to all other forms of ancillary shareholder information used by the corporation to contact its shareholders, such as Cede & Co. breakdowns and magnetic tapes. *Id; see also Scott v. Multi-Amp Corp.,* 386 F.Supp. 44, 51 (D.N.J.1974); *Hatleigh, supra,* pg. 1146.

■ Based upon the preceding authority, it appears that Bryson is entitled to inspect all materials which Cenergy uses regularly to communicate with its shareholders. This would include the NOBO list, as well as any Cede & Co. breakdowns and computer records which Cenergy has in its possession. Cenergy argues, however, that the Court cannot read the Nevada statute as to allow this broader type of inspection rights, for the Nevada Supreme Court has given this statute a very narrow construction. In that the state's highest court has narrowly construed the inspec-

tion rights, Cenergy argues that this Court must similarly construe them.

Initially, the state supreme court opinion cited by Cenergy, *Crown-Zellerbach Corp. v. General Oriental Securities Ltd.*, No. 16417 (Nev. May 1, 1985), is an unpublished opinion. As such, it does not constitute authority, even in the state system. *See Nevada Employment Security Dep't v. Weber*, 100 Nev. 121, 122, 676 P.2d 1318 (1984) (citation of unpublished orders of the state supreme court is prohibited); Supreme Court Rule 123 (unpublished opinions shall not be regarded as precedent and shall not be cited as legal authority). Even if the Court were to consider this case, it would not alter the decision made here. At issue in *Crown-Zellerbach* was the interpretation of the qualifications for giving access to shareholder lists under § 78.-105(2). In that case, the court held that it would require all parties to be shareholders of record in order to gain access to the stock ledger. Because some states do not require shareholders to be of record to see the list, the court found its reading of the statute to be comparatively narrow. *Crown-Zellerbach, supra,* slip op. at 3.

That the supreme court has limited the class of shareholders entitled to see the stock ledger to only record owners does not mean that the information which those shareholders will receive is also necessarily limited. The factors to be taken into consideration are quite different in the two questions. As regards access to the stock ledger, a court might reasonably conclude that only record shareholders ought to be allowed access, so as to simplify corporate record-keeping, and prevent the list from being distributed wrongly. At the same time, however, a court could also require that the corporation turn over all information it uses to contact shareholders along with the stock ledger, in order to facilitate corporate democracy. A strict reading of the access question does not therefore necessarily imply a strict reading on the information question.

Cenergy nonetheless stoutly protests that it has never used a NOBO list or any such ancillary material in communicating with its shareholders. Although it is difficult to imagine that a corporation does not have a good idea of who its actual owners are, the Court will not order Cenergy to acquire specially any shareholder information which it does not already possess in order to then distribute it to Bryson. Cenergy must, however, allow Bryson access to any and all shareholder information, such as NOBO lists and Cede & Co. breakdowns, which it has in its possession at this time for the purpose of contacting its shareholders.

IT IS, THEREFORE, HEREBY ORDERED that defendant Bryson's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that plaintiff Cenergy shall allow Bryson to inspect its stock ledger, and all other information in Cenergy's possession for the purpose of contacting and communicating with its shareholders. This inspection shall take place at the place of business where these records are normally kept, and shall take place during normal business hours. The inspection shall take place within ten days of the issuance of this order.

IT IS FURTHER ORDERED that Cenergy's motion for leave to cite an unpublished opinion is DENIED.

IT IS FURTHER ORDERED that Cenergy's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment in favor of defendant and against plaintiff in accordance with the foregoing orders.