KLEIN, Judge,
dissenting.
All of the cases relied on by the majority emanate from Shamrock Associates v. Texas American Energy Corp., 517 A.2d 658 (Del. Ch.1986), a case holding that if the corporation has obtained the NOBO list, it must give it to the shareholder. The eases simply appear to conclude that it follows from Shamrock that if the corporation has not already obtained the NOBO list, it does not have to obtain and produce it. In my opinion, the second proposition does not follow from the first. After all, NOBOs are shareholders, the corporation is statutorily required to maintain a list of its shareholders, NOBOs have indicated that they want to receive communications regarding the corporation, and the NOBO list is easily obtained.
The cases relied on by the majority also appear to suffer from another infirmity, which is that they have failed to consider the fact that when NOBOs cannot be reached, and thus do not vote, their failure to vote is, in effect, a vote in favor of management. I therefore find the Sadler ease more well reasoned.
In Shamrock, in which the corporation had already obtained the NOBO list, the chancellor reasoned that there was no distinction between a CEDE list and a NOBO list which would warrant different treatment; that beneficial owners, by allowing their names to appear on the NOBO list, indicated that they welcomed direct communications from the corporation as well as other stockholders; and that requiring the corporation to furnish both lists is beneficial to all stockholders. Id. at 661.
Although the reasoning in Shamrock would appear to support obtaining and producing the NOBO list, even if the corporation does not have it, in the next case, RB Associates of New Jersey v. Gillette Co., 1988 WL 27731 (Del.Ch.) 13 Del.J.Corp.L. 1220 (1988), the chancellor concluded that “broad concepts of fairness” do not require the corporation to obtain the NOBO list and furnish it to a shareholder if the corporation does not already have it. Although the chancellor acknowledged that this would prevent the shareholders from telephoning NOBOs, he concluded that “[t]he idea of equality of access to information concerning identity of shareholders ought not, in my opinion, go so far as to compel the directors to exercise a judgment to obtain NOBO lists when the corporation itself has no need for them and thus no intention to obtain them.” Id. at 1230-1231.
The two cases from jurisdictions other than Delaware simply conclude, like RB Associates, that if the corporation has not obtained the NOBO list, there is no reason to require it to do so. In Cenergy Corp. v. Bryson Oil & Gas P.L.C., 662 F.Supp. 1144 (D.Nev.1987), the court relied on Shamrock, but gave no real explanation as to why it came to that conclusion. The court even acknowledged:
Bryson argues that it must have access to the NOBO materials, which would include the names and addresses of the beneficial *357 owners of Cenergy stock, in order to wage a proxy battle. There is no doubt that this is true. Without the names and addresses of the beneficial owners of the shares, Bry-son could not contact them, and therefore could not run a proxy campaign.
Id. at 1147. The third ease on which the majority relies is Parsons v. Jefferson-Pilot Corp., 833 N.C. 420, 426 S.E.2d 685 (1993), which simply relied on the Delaware cases and Cenergy.
I am troubled by the above cases because they give management an unfair advantage for no good reason. Although this may be a coincidence, Delaware corporate law has been depicted as:
[T]he winner of a deplorable “race to the bottom” in which competition among the states for franchise taxes has led Delaware to produce a system of corporate law rules that permits corporate managers to exploit shareholders to their own ends.[5]
In contrast to the cases on which the majority relies, the second circuit, in Sadler v. NCR Corp., 928 F.2d 48 (2d Cir.1991), found that there is no reason to prevent a shareholder from obtaining a NOBO list and, where neither side has a NOBO list, management has an unfair advantage. After discussing the distinctions between a CEDE and NOBO list made by the Delaware court, the second circuit stated:
We do not find either distinction compelling.
Since compilation of a NOBO list is a relatively simple mechanical task, the fact that compilation takes longer than for a CEDE list is an insubstantial basis for distinction. As to both sets of information, the underlying data exist in discrete records readily available to be compiled into an aggregate list. Nor are the functions of the lists significantly dissimilar. Both facilitate direct communication with stockholders, in the case of a NOBO list; at least with those beneficial owners who have indicated no objection to disclosure of their names and addresses.
Though Delaware chooses to construe the reach of its requirements on stockholder fist disclosure narrowly in this respect, we think New York would construe section 1315 more generously. Once the Securities and Exchange Commission has acted to enable a corporation to obtain from brokers and other record owners a list of beneficial owners of its shares who do not object to such disclosure, we think New York would apply section 1315 to permit a qualifying shareholder to require the compilation and production of such list.
Even if the statute might not require compilation of NOBO lists routinely, we agree with Judge Stanton that compilation was properly ordered in this case. The effect of NCR’s 80 percent rule is to count as a “no” vote on the replacement of directors every share that is not voted at the special meeting. Thus, the shares of non-voting beneficial owners who might oppose management if solicited by management opponents armed with a NOBO list are counted in favor of management. Denying such opponents an opportunity to contact the NOBOs is inconsistent with the statute’s objective of seeking “to the extent possible, to place shareholders on an equal footing with management in obtaining access to shareholders.” Bohrer, 150 A.D.2d at 196-97, 540 N.Y.S.2d at 446. In effect, NCR already has the votes of those NOBOs who, for lack of solicitation, decline to vote. As to them, NCR has all the access it needs.
Sadler, 928 F.2d at 53. Although the majority chooses to limit Sadler to its facts, my reading of Sadler is that the second circuit did not so limit its holding.
In the present case, although the corporation does not have the 80% rule which the corporation had in Sadler, the shareholders against management would have had to obtain one more than 50% of the outstanding votes to remove the present directors. Accordingly, if there were 100 shareholders who each owned one share, and the appellants could only contact 50 (since they do not *358 have the NOBO list), even if all 50 who were contacted voted to remove the present directors, appellants would still fall one vote short. The NOBOs who do not vote, in effect, vote for the present directors. Management thus has an unfair advantage in the present case, just as management had an unfair advantage in Sadler. The 80% rule which the corporation had in Sadler makes Sadler distinguishable only in the extent of the unfairness, not in the existence of it.
The shareholders presented evidence in this case that all that the corporation would have to do to obtain a NOBO list would be to fax a one paragraph letter to the entity having that information, ADP. The cost would be fifteen cents per name, and less than $1,000, which the shareholders offered to pay. And it could be obtained in no more than 10 days. As the court observed in Sadler, 928 F.2d at 52, it is “undisputed that a corporation can obtain a NOBO list, normally within ten days, by requesting compilation of the list by firms that offer data processing services for this task.”
I would follow Sadler and require the corporation to obtain the NOBO list when the shareholder requests it and offers to pay the cost.

. Macey and Miller, Toward an Interest-Group Theory of Delaware Corporate Law, 65 Tex.L.Rev. 469, 523 (1987), crediting the term "race for the bottom” to Professor William Cary. See Cary, Federalism and Corporate Law: Reflections Upon Delaware, 83 Yale LJ. 663, 666 (1974).