SECURITY FIRST CORPORATION, a
Delaware Corporation, Defendant
Below, Appellant,

v.

U.S. DIE CASTING AND DEVELOP-
MENT COMPANY, an Ohio Corpo-
ration, Plaintiff Below, Appellee.

No. 87, 1996.

Supreme Court of Delaware.

Submitted: Dec. 3, 1996.
Decided: Jan. 14, 1997.

Peter J. Walsh, Jr. (argued), Kevin R. Shannon of Potter, Anderson & Corroon, Wilmington (James S. Hogg of Ulmer & Berne, Cleveland, Ohio, of counsel), for Appellant.

Thomas Herlihy III of Herlihy, Harker & Kavanaugh, Wilmington, and Byron S. Krantz and Jonathon M. Yarger (argued), of Kohrman, Jackson & Krantz, Cleveland, Ohio, for Appellee.

Before VEASEY, C.J., HOLLAND, HARTNETT and BERGER, JJ., and RIDGELY, President Judge,* constituting the Court en Banc.

* Sitting by designation pursuant to Del. Const., Art. IV, §§ 12 and 38, and Supreme Court Rules

VEASEY, Chief Justice.

In this appeal we hold that a stockholder may demonstrate a proper demand for the production of corporate books and records upon a showing, by the preponderance of the evidence, that there exists a credible basis to find probable corporate wrongdoing. The stockholder need not actually prove the wrongdoing itself by a preponderance of the evidence. Therefore, the trial judge's determination of that credible basis after considering the totality of the evidence is entitled to considerable deference.

The Section 220 demand for books and records under the Delaware General Corporation Law serves many salutary goals in the corporate governance landscape, but the burden on the plaintiff is not insubstantial. The statutory remedy is not an invitation to an indiscriminate fishing expedition. The plaintiff must not only show a credible basis to find probable wrongdoing, but must justify each category of the requested production. Accordingly, the trial court's order must be carefully tailored.

In this case, the judgment of the trial court on the entitlement to books and records is affirmed, but the scope of the judgment is reversed as overly broad on this record. The proceeding is remanded for a determination of a properly tailored order of inspection. In addition, the judgment of the Court of Chancery ordering a stock list is reversed, there being no proper basis on this record for the production of a stock list.

*Facts*

The following factual background is summarized from the findings set forth in the trial court's opinion.[1]

Defendant Security First Corporation ("Security First") is a Delaware corporation with its principal place of business in Mayfield Heights, Ohio. It serves as a bank holding company for Security First Federal Savings and Loan, an Ohio savings and loan. The stock of Security First is publicly traded on NASDAQ. Charles F. Valentine is the Chairman and Chief Executive Officer of Security First.

Plaintiff U.S. Die Casting and Development Corporation ("U.S. Die") is a closely-held Ohio corporation. It is the record holder of approximately five percent of the common stock of Security First. David Slyman is the President, Chief Executive Officer, and sole stockholder of U.S. Die.

On September 1, 1994, Security First entered into an Agreement and Plan of Merger ("Merger Agreement") with Mid Am, Inc. ("Mid Am"), a much larger regional bank holding company. Mid Am filed documents with the Securities and Exchange Commission by which the value of the merger was fixed at approximately $79 million. After the announcement of the merger, the fair market value of Security First's stock increased significantly.

The Merger Agreement enumerated specific terms by which the parties could terminate the merger. The relevant terms include:

**Section 9.01 Termination.** This AGREEMENT may be terminated at any time prior to the EFFECTIVE TIME, whether before or after approval by the shareholders of SECURITY and MID AM:

(a) By mutual consent of the Boards of Directors of SECURITY and MID AM;

(b) By the Board of Directors of either SECURITY or MID AM if:

(i) The MERGER shall not have been consummated on or before April 30, 1995 (unless the failure to consummate the MERGER by such date shall be due to the action or failure to act of the party seeking to terminate this AGREEMENT in breach of such party's obligation under this AGREEMENT); or

(ii) Any event occurs which, in the reasonable opinion of either Board, would preclude satisfaction of any of the conditions set forth in Section 7.01 of this AGREEMENT[.]

The Merger Agreement required Security First to pay a termination fee of $2 million,

2 and 4(a).

1. *U.S. Die Casting and Development Co. v. Security First Corp.*, Del.Ch., C.A. No. 14019, 1996 WL 73574 (Feb. 8, 1996).

plus third-party expenses not to exceed $250,000, contingent on the occurrence of certain events within one year after termination:

> **Section 9.05 Termination Fee.** In the event of the failure of the SECURITY shareholders to approve the MERGER and this AGREEMENT, provided at the time of the SECURITY shareholders' meeting to vote upon this MERGER either (a) there is outstanding an announced offer by a third-party to acquire SECURITY, by merger consolidation, exchange offer or asset purchase, or a tender offer for at least fifty-one percent (51%) of the outstanding SECURITY common stock in either case providing a per share purchase valued at the time of its announcement of at least $14.79 to the SECURITY shareholders or (b) the Board of Directors of SECURITY fails to favorably recommend approval of the AGREEMENT, then in any such event, SECURITY shall pay Two Million Dollars ($2,000,000) to MID AM as an agreed upon termination fee plus the third-party expenses incurred by MID AM in connection with the transaction contemplated by this AGREEMENT but not to exceed Two Hundred Fifty Thousand Dollars ($250,000) upon the occurrence of any of the following events within one (1) year after termination of this AGREEMENT:
>
> > (i) any person or group of persons (other than MID AM and/or its affiliates) shall acquire more than fifty percent (50%) of the outstanding SECURITY common stock at a per share purchase price equal to or greater than $14.79; or
> >
> > (ii) upon the entry by SECURITY into a definitive agreement with a person or group of persons (other than MID AM and/or its affiliates) for such person or group of persons to acquire, merge, or consolidate with SECURITY or to acquire all or substantially all of SECURITY'S assets and wherein

the per share purchase price at the time of the initial public announcement thereof equals or exceeds $14.79.

In December 1994, the merger fell through. Security First alleges that the breakdown resulted from "the realization that Mid Am's management philosophy and direction were fundamentally different from its own."

Without the occurrence of an event specified by Section 9.05 of the Merger Agreement, Security First and Mid Am entered into a Termination Agreement ("Termination Agreement") on December 28, 1994. Pursuant to the Termination Agreement, defendant paid Mid Am $275,000, and agreed to pay an additional $2 million contingent on the occurrence within one and a half years of the Termination Agreement of an event listed in Section 9.05, *supra.*

After the Termination Agreement was disclosed, the value of defendant's common stock dropped significantly, and has not rebounded. Defendant has increased dividend payments to its stockholders since the termination.

On January 12, 1995, plaintiff submitted a written demand to defendant pursuant to 8 *Del.C.* § 220 ("Section 220")[2] to inspect all of the defendant's and its subsidiaries' books and records related to the Mid Am merger and its termination. Defendant refused to comply.

On February 7, 1995, plaintiff initiated this action in the Court of Chancery. Trial of the matter was held on July 6, 1995. By order dated February 8, 1996, the Court of Chancery granted to plaintiff the relief it sought. From this decision, Security First appeals.

### *Proper Purpose: U.S. Die's Claim of Mismanagement*

Section 220 of the Delaware General Corporation Law permits a stockholder, who shows a specific proper purpose and who

---

**2.** 8 *Del.C.* § 220, Inspection of books and records, provides in pertinent part:

(b) Any stockholder, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to

inspect for any proper purpose the corporation's stock ledger, a list of its stockholders, and its other books and records, and to make copies or extracts therefrom. A proper purpose shall mean a purpose reasonably related to such person's interest as a stockholder....

complies with the procedural requirements of the statute, to inspect specific books and records of a corporation.[3]

■ In the case *sub judice,* the Court of Chancery, after a trial which included live witnesses and documentary evidence, found that, "[a]ccording to the *Amended Complaint* and *Plaintiff's Trial Brief* and *Plaintiff's Post-Trial Reply Brief,* Plaintiff's purpose for requesting an inspection of Defendant's books and records is to investigate the possibility of corporate mismanagement."[4] It is well established that investigation of mismanagement is a proper purpose for a Section 220 books and records inspection.[5] A stockholder's entitlement to inspection of corporate books and records depends on whether or not a credible basis to find probable wrongdoing on the part of corporate mismanagement has been established.[6] At the trial of a summary proceeding under Section 220(d), the plaintiff must show the credible basis by a preponderance of the evidence. The actual wrongdoing itself need not be proved in a Section 220 proceeding, however.

■ This Court reviews *de novo* the question of a "proper purpose" under Section 220(b).[7] Defendant's first contention is that the Court of Chancery erroneously relied upon plaintiff's "written proffer," *i.e.,* its Amended Complaint, Trial Brief, and Post-Trial Reply Brief. Defendant argues that the trial court should have relied instead on the trial testimony of David Slyman, the President, Chief Executive Officer, and sole stockholder of U.S. Die. Concerning the purpose for the inspection, Slyman testified:

I would like to make my own decision as to why the merger was not completed. Telling me that it was a difference of philosophies didn't get me to understand why it was not completed. The philosophy was there prior to it. . . .

Defendant argues that the purpose which Slyman articulated at trial was insufficient and that this insufficiency is fatal. This argument must fail. Slyman's testimony does call into question defendant's purported reason for abrogating the Merger Agreement—namely, that "the realization that Mid Am's management philosophy and direction were fundamentally different from its own."[8] The Court of Chancery found defendant's reason suspect. The Court stated that "[a] reasonable stockholder could conclude prudent management would have researched 'fundamental' similarities and dissimilarities of the merging company before entering the Merger Agreement."[9]

In addition to arguing that the purpose which Slyman articulated at trial was insufficient, defendant contends that the Court of Chancery should have relied solely on Slyman's testimony in order to deduce plaintiff's purpose for its books and records demand. The failure of plaintiff's key witness to articulate certain "magic words" while testifying at trial is not fatal to a Section 220 action.[10] Although the Court of Chancery referred, somewhat cryptically, to a written proffer which was incorporated in plaintiff's pleadings and briefs, we understand that the trial court considered the totality of the trial record in making its findings. Accordingly, we find that the Court of Chancery properly

---

**3.** This Court has encouraged the use of Section 220 as an "information-gathering tool in the derivative context," provided a proper purpose is shown. *Rales v. Blasband,* Del.Supr., 634 A.2d 927, 934–935 n. 10 (1993). *See also Grimes v. Donald,* Del.Supr., 673 A.2d 1207, 1216 (1996).

**4.** *U.S. Die,* slip op. at 9 (footnote omitted).

**5.** *Thomas & Betts Corp. v. Leviton Manufacturing Co.,* Del.Supr., 681 A.2d 1026, 1031 (1996).

**6.** *Id. See also Skouras v. Admiralty Enterprises, Inc.,* Del.Ch., 386 A.2d 674, 678 (1978).

**7.** *Thomas & Betts Corp.,* 681 A.2d at 1030.

**8.** *U.S. Die,* slip op. at 11.

**9.** *U.S. Die,* slip op. at 12.

**10.** The plain language of 8 *Del.C.* § 220(b) provides that "[a]ny stockholder, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right ... to inspect for any proper purpose the corporation's ... books and records...." Plaintiff, by its attorney, properly stated its purpose in its written demand as well as in its Amended Complaint, Trial Brief, and Post-Trial Reply Brief. It proved the proper purpose at trial, the Court of Chancery found.

relied on all of the evidence adduced at trial.[11] Most importantly, the trial judge made credibility assessments of live witnesses.

■ Defendant next contends that the Court of Chancery applied an incorrect legal standard, when it stated, "I accept Plaintiff's written proffer [that] this payment alone represents a specific transaction raising the *plausibility* of more than speculative, general mismanagement."[12] This Court recently stated, "In order to meet that burden of proof, a stockholder must present some credible basis from which the court can infer that waste or mismanagement may have occurred,"[13] and cited with approval the following proposition:

> A mere statement of a purpose to investigate possible general mismanagement, without more, will not entitle a shareholder to broad § 220 inspection relief. There must be some evidence of *possible* mismanagement as would warrant further investigation of the matter.[14]

The difference between the Vice Chancellor's finding that "a specific transaction rais[ed] the *plausibility* of more than speculative, general mismanagement"[15] and the requirement that "[t]here must be some evidence of possible mismanagement as would warrant further investigation"[16] is merely semantic.

■ Finally, defendant maintains that plaintiff failed to produce any evidence of mismanagement. This argument misses the point. In a Section 220 action, a stockholder has the burden of proof to demonstrate a proper purpose,[17] but a stockholder is "not required to prove by a preponderance of the evidence that waste and [mis]management are actually occurring."[18] The threshold for a plaintiff in a Section 220 case is not insubstantial. Mere curiosity or a desire for a fishing expedition will not suffice. But the threshold may be satisfied by a credible showing, through documents, logic, testimony or otherwise, that there are legitimate issues of wrongdoing.

As specific instances of misconduct, plaintiff questions defendant's payment of $275,000 to Mid Am "when Defendant never broke the Merger Agreement."[19] Plaintiff also questions defendant's failure to request documentation from Mid Am of its expenses to justify defendant's expenditure of $275,000, which was $25,000 more than the Merger Agreement stipulated for expenses.[20] On their face, these issues raise questions. The effect of the Vice Chancellor's conclusion after trial is that the questions remain.

Defendant also agreed to pay Mid Am $2 million contingent on the certain occurrences within one and a half years of the Termination Agreement. Pursuant to the Merger Agreement, defendant previously had agreed to pay Mid Am $2 million contingent on the same occurrences within one year. As plaintiff's counsel, in a letter dated 1/19/95 to Security First's Chairman and CEO Charles Valentine, stated "This either takes the company 'out of play' or diminishes the amount payable to the stockholders if it is sold. In either event, the agreement seems inappropriate and destructive to stockholder values."

The Court of Chancery also viewed as evidence suggestive of misconduct the fact that, after the Termination Agreement was disclosed, the value of defendant's common stock dropped significantly and has not rebounded. Moreover, defendant has in-

11. *Accord Helmsman Management Servs. v. A & S Consultants, Inc.*, Del.Ch., 525 A.2d 160, 164 (1987) ("The propriety of a demanding shareholder's purpose must be determined from the facts in each case.").

12. *U.S. Die,* slip op. at 10.

13. *Thomas & Betts Corp.,* 681 A.2d at 1031.

14. *Helmsman Management Servs.,* 525 A.2d at 166 (emphasis added).

15. *U.S. Die,* slip op. at 10.

16. *Helmsman Management Servs.,* 525 A.2d at 166.

17. 8 *Del.C.* § 220(c).

18. *Thomas & Betts Corp.,* 681 A.2d at 1031 ("In order to meet that burden of proof, a stockholder must present some credible basis from which the court can infer that waste or mismanagement may have occurred.").

19. *U.S. Die,* slip op. at 10.

20. *Id.*

creased dividend payments to its stockholders since the termination. According to the Court of Chancery, "A thoughtful stockholder might look at this dividend increase as an effort to ameliorate dismay about the Board of Directors' abandonment of a seemingly beneficial merger for Security First stockholders."[21]

In the instant case, the Court of Chancery found:

> Contrary to Defendant's allegations, the evidentiary hearing produced testimony substantiating Plaintiff's claim. I listened to the trial testimony, observed the demeanor of the witnesses, and assessed their apparent frankness and the fairness of their testimony. I find Plaintiff's stated proper purpose convincing. Plaintiff's proper purpose is tied specifically to the point in time of Defendant's failure to consummate the Merger Agreement....[22]

The trial court's decision turned in part on the Vice Chancellor's determination that defendant's witnesses were not credible.[23] "When the determination of facts turns on a question of credibility and the acceptance or rejection of 'live' testimony by the trial judge, [the trial court's] findings will be approved upon review."[24] We hold that plaintiff has established a proper purpose for its request to inspect some books and records. The scope of that inspection is a separate issue on which plaintiff bears the burden of specific justification.

### The Scope of the Books and Records Inspection

■ Absent any apparent error of law, this Court reviews for abuse of discretion the decision of the trial court regarding the scope of a stockholder's inspection of books and records.[25] The plaintiff bears the burden of proving that each category of books and records is essential to the accomplishment of the stockholder's articulated purpose for the inspection.[26]

■ Section 220(c) provides that "[t]he Court may, in its discretion, prescribe any limitations or conditions with reference to the inspection." While the trial court has wide latitude in determining the proper scope of inspection, it is the responsibility of the trial court to tailor the inspection to the stockholder's stated purpose. "Undergirding this discretion is a recognition that the interests of the corporation must be harmonized with those of the inspecting stockholder."[27]

■ In the instant case, the Court of Chancery found that plaintiff's request to inspect books and records was "self-tailored."[28] We disagree.

Plaintiff sought, and the Court of Chancery granted, inspection of the following:

a. The agreement by and between Security First and Mid Am reported to have been made on or about September 1, 1994, and any amendments and modifications thereof (hereinafter the "Agreement");

b. All minutes, notes, records, memoranda, writings, correspondence, telephone messages or the like which in any way directly or indirectly deal with or discuss the Agreement;

c. All press releases relative to the Agreement;

d. Any and all documents or records discussing the relationship between the employees of Security First after the completion of the merger contemplated by the Agreement;

---

21. *U.S. Die*, slip op. at 11.

22. *U.S. Die*, slip op. at 10–11.

23. According to the Court of Chancery, defendant's Chief Executive Officer, Charles Valentine, "delivered patent sophistry from the witness stand...." *U.S. Die*, slip op. at 11. *Cf. Thomas & Betts Corp.*, 681 A.2d at 1032.

24. *Levitt v. Bouvier*, Del.Supr., 287 A.2d 671, 673 (1972); *accord Thomas & Betts Corp.*, 681 A.2d at 1032.

25. 8 *Del.C.* § 220(c); *Thomas & Betts Corp.*, 681 A.2d at 1034–35.

26. *Thomas & Betts Corp.*, 681 A.2d at 1035.

27. *Id.*

28. *U.S. Die*, slip op. at 12.

e. Minutes of all proceedings of directors or committees of directors from January 1, 1994;

f. All minutes, notes, records, memoranda, writings, correspondence, telephone calls or the like which in any way directly or indirectly deal with or discuss the payment of $275,000 to Mid Am and/or a penalty to be paid if Security First and/or its assets are sold to another in the future;

g. Any and all bank or savings and loan regulatory applications and amendments thereto related to the Agreement;

h. Any and all correspondence with federal and/or state bank or savings and loan regulatory agencies in connection with the Agreement; and

i. The most recent list of stockholders.

We find that plaintiff has not met its burden of proof on this record to establish that each category of books and records requested is essential and sufficient to its stated purpose. For example, Paragraph 8(e) of the Amended Complaint requests "Minutes of all proceedings of directors or committees of directors from January 1, 1994." Security First did not enter into discussions with Mid Am until the Spring of 1994. While plaintiff argues that the pre-merger meeting minutes are reasonably related to its purpose, this determination is for the trial court to make.[29]

The scope of the production which the Court of Chancery ordered in this case is more akin to a comprehensive discovery order under Court of Chancery Rule 34 than a Section 220 order. The two procedures are not the same and should not be confused. A Section 220 proceeding should result in an order circumscribed with rifled precision. Rule 34 production orders may often be broader in keeping with the scope of discovery under Court of Chancery Rule 26(b).

It may well be that upon remand a record will be developed to justify the breadth of all

or a significant portion of the order before us in accordance with this standard. Accordingly, we remand this case to the Court of Chancery to determine whether the stockholder met its burden of showing, by a preponderance of the evidence, a proper purpose entitling the stockholder to an inspection of each category of the documents it seeks.

### Inspection of Stockholder List

■ Under Section 220(c), when a stockholder complies with the statutory requirements governing the form and manner of making a demand to obtain a stockholder list, the corporation bears the burden of proving that the demand is for an improper purpose.[30] This Court reviews *de novo* the question of proper purpose when a stockholder seeks to inspect a stockholder list.[31]

■ U.S. Die made a written demand for copies of defendant's most recent stockholder list "to communicate with the shareholders of Security with respect to Security's business, particularly the failed merger with Mid Am., Inc." In his deposition and at trial, however, Slyman admitted that he had no idea what he would do with such a list. It is a sufficient defense for a corporation to show that a stockholder list was sought from "idle curiosity." [32] We find that Security First has met its burden of proving that the plaintiff's demand to inspect the stockholder list was not for a proper purpose. Accordingly, we reverse the Court of Chancery's decision to grant plaintiff's request to inspect defendant's stockholder list.

■ We note, however, that U.S. Die is not precluded from making a new demand and, if necessary, filing a new proceeding to obtain the stockholder list. Neither the doctrine of *res judicata* [33] nor the principle of

**29.** See Thomas & Betts Corp., 681 A.2d at 1035; Helmsman Management Servs., 525 A.2d at 167.

**30.** 8 Del.C. § 220(c); Compaq Computer Corp. v. Horton, Del.Supr., 631 A.2d 1, 3 (1993).

**31.** Western Air Lines, Inc. v. Kerkorian, Del.Supr., 254 A.2d 240 (1969). See also Compaq Computer Corp., 631 A.2d at 3.

**32.** Insuranshares Corporation of Delaware v. Kirchner, Del.Supr., 5 A.2d 519, 521 (1939).

**33.** Hatleigh Corp. v. Lane Bryant, Inc., Del.Ch., 428 A.2d 350 (1981).

the law of the case [34] has any application to a subsequent demand by U.S. Die to inspect the stockholder list. If U.S. Die has a *bona fide* purpose to inspect the list and if there has been a material change of circumstances since its February 1995 demand, U.S. Die may be able to establish its entitlement to inspect and copy the list of stockholders of Security First upon reasonable terms and conditions.[35]

### Conclusion

Section 220 proceedings are an important part of the corporate governance landscape in Delaware. Stockholders have a right to at least a limited inquiry into books and records when they have established some credible basis to believe that there has been wrongdoing. In fact, a Section 220 proceeding may serve a salutary mission as a prelude to a derivative suit.[36] Yet it would invite mischief to open corporate management to indiscriminate fishing expeditions. The trial court must assure that a proper balance is struck.

The judgment of the Court of Chancery granting U.S. Die's entitlement to inspect books and records is **AFFIRMED**. The breadth of the order is **REVERSED** on this record, however. This case is **REMANDED** to the Court of Chancery to open the record and to consider whether the plaintiff has carried its burden of proving that each category of books and records is essential to the accomplishment of the stockholder's articulated purpose for the inspection. The judgment of the Court of Chancery granting U.S. Die's entitlement to inspect the list of Security First's stockholders is **REVERSED**.

Jurisdiction is not retained.

**34.** *See Insurance Corp. of America v. Barker,* Del. Supr., 628 A.2d 38, 40–41 (1993).

**35.** *Hatleigh Corp.,* 428 A.2d at 353.

**36.** *Grimes v. Donald,* Del.Supr., 673 A.2d 1207, 1216 n. 11 (1996) (noting that Section 220 may be used in certain cases to secure information to support demand futility); *see also Thomas & Betts Corp.,* 681 A.2d at 1031 n. 3 ("this Court in *Grimes* did not suggest that its reference to a Section 220 demand as one of the 'tools at hand' was intended to eviscerate or modify the need for

a stockholder to show a proper purpose under Section 220."). The Court was informed by counsel at oral argument that other litigation between the parties is pending in the Court of Chancery, and that an issue in that litigation is whether or not the claim is derivative for purposes of compliance with Court of Chancery Rule 23.1. We have not considered the existence of that litigation to be relevant for purposes of this Opinion except that we were assured by counsel at oral argument that our decision herein has not thereby been rendered moot.