SAHAGEN SATELLITE TECHNOL-OGY GROUP, LLC, Plaintiff,

v.

ELLIPSO, INC., A Delaware corporation, Defendant.

Civil Action No. 18020 NC.

Court of Chancery of Delaware, New Castle County.

Submitted: Aug. 11, 2000.
Decided: Sept. 27, 2000.

Stuart M. Grant, Esquire, and Megan D. McIntyre, Esquire, Grant & Eisenhofer, Wilmington, Delaware, Attorneys for Plaintiff.

Thomas R. Hunt, Jr., Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, Attorneys for Defendant.

### OPINION

LAMB, Vice Chancellor.

### I.

This is an action brought pursuant to Section 220 of the Delaware General Corporation Law in which the plaintiff, Sahagen Satellite Technology Group, LLC ("SSTG"), seeks to compel an inspection of the books and records of defendant, Ellipso, Inc. Ellipso is a Delaware corporation with its principal place of business in Washington, D.C. This action is part of a broader war being waged between Peter D. Sahagen, the owner and Manager of SSTG, on the one hand, and Dr. David Castiel, Ellipso and Virtual Geo–Satellite System, LLC., on the other hand. These matters are discussed in greater detail in a recent decision of Vice Chancellor (now Justice) Steele.[1]

---

1. *VGS, Inc. v. Castiel, et al.,* Del. Ch., C.A. No. 17995, 2000 WL 1277372, Steele, V.C. (sitting by designation) (Aug. 31, 2000).

SSTG is a stockholder of Ellipso and, on April 21, 2000, delivered to Ellipso at its principal place of business a letter demanding the right to inspect the following books and records, among other things ("Demand Letter"): [2]

> All financial books and records of the Company and its subsidiaries from 1991 through the present, including all records pertaining to the income, expenditures, assets, and liabilities of the Company and its subsidiaries.

The Demand Letter was signed by Peter D. Sahagen, as Manager of SSTG, but was not made under oath. The letter states that the purpose of the demand is "to obtain information concerning whether Ellipso's management has mismanaged the Company by, among other things, diverting corporate assets from of [sic] the Company and failing to take advantage of corporate opportunities."

Ellipso formally rejected the requested inspection by letter dated April 27, 2000, signed by Ellipso's President and Chief Executive Officer, David Castiel. SSTG began this action seeking to compel the inspection on May 2, 2000. The matter was tried July 27, 2000, and post-trial briefing was completed on August 8, 2000.

## II.

On July 25, 2000, only two days before the date set for trial, the defendant moved to dismiss the complaint on the ground that the Demand Letter was not made "under oath" as required by 8 *Del. C.* § 220. The pretrial order, filed the same day, also reflects defendant's contention that an oath was omitted. This ground of defense was not specifically identified in the answer filed June 1, 2000.

In its post-trial submission, Ellipso attempts to shift to plaintiff's shoulders the responsibility for the delay in identifying this defense, as follows:

> Any delay in plaintiff learning about the defect in its demand is attributable to plaintiff's counsels' inexplicable delay in forwarding their sections of the pre-trial order for more than 11 weeks. Indeed, plaintiff's version was not received until mid-day Saturday, July 22, 2000. Within one business day, plaintiff's counsel received defendant's sections of the pre-trial order.

The effort to avoid responsibility for the late assertion of this defense fails. Obviously, the motion to dismiss could have, and should have been, filed at the time the answer was filed, which asserted only in general terms that the complaint failed to state a claim for relief. By contrast, the pre-trial order was not due to be filed until July 25, 2000, after the completion of pre-trial discovery. And, in the context of expedited summary proceedings, it is hardly surprising that plaintiff's portion of the pre-trial order was delivered only a few days before that due date.

The Delaware Supreme Court has specifically criticized the practice of delaying the presentation of technical defenses in summary proceedings, stating:

> [W]e believe that the exercise of discretion in permitting the assertion of hypertechnical defenses, not otherwise specifically pled in the answer, must turn on a good faith showing by the defendant that it could not by its own efforts and diligence determine the existence of such a defense prior to its actual assertion. . . . [3]

---

2. Plaintiff also demanded certain stocklist information. The claims relating to that aspect of the demand were resolved before trial.

3. *Van Leeuwen v. Gas Service Co.,* Del.Supr., 467 A.2d 455 (July 6, 1983)(ORDER).

Here, the defendant has made no such "good faith showing," and its motion must be denied. Because defendant delayed raising this technical defense until the eve of trial, I will permit Sahagen's trial testimony to supply the missing verification.

## III.

■ SSTG's right of inspection under § 220 depends on the propriety of the purpose stated in its demand.[4] A purpose is "proper" if it is "reasonably related to [SSTG's] interest as a stockholder."[5] Moreover, that stated purpose must be SSTG's primary purpose.[6] As the court said in *Skouras v. Admiralty Enterprises, Inc.*:

> [A]lthough the court cannot, of course, read the thoughts of a stockholder, it must be satisfied that a plaintiff has successfully carried the burden of proving that the purpose behind his demand is proper. Once a proper purpose is established, it becomes irrelevant that the stockholder my have a secondary and perhaps questionable ulterior purpose behind his primary purpose.[7]

■ SSTG's stated purpose is to investigate waste or mismanagement in the form of "diversion of corporate assets" and a failure to "take advantage of corporate opportunities." In the circumstances, SSTG bore the burden of proving at trial, by a preponderance of the evidence, "a credible basis to find probable wrongdoing on the part of corporate management."[8] "The threshold for a plaintiff in a Section 220 case is not insubstantial. Mere curiosity or a desire for a fishing expedition will not suffice. But the threshold may be satisfied by a credible showing, through documents, logic, testimony or otherwise, that there are legitimate issues of wrongdoing."[9] Of course, "the actual wrongdoing itself need not be proved in a Section 220 proceeding."[10]

■ At trial, Peter D. Sahagen, the Manager of SSTG, testified about SSTG's purpose. He said that, despite repeated requests, SSTG had not received any written financial information from Ellipso since making the investment in early 1999. The absence of such financial information raises concerns for SSTG because Ellipso has raised and spent large sums in the recent past but has not appeared to make significant progress in implementing its business plan.

Sahagen also testified about information conveyed to him by employees of Ellipso that have caused him (and SSTG) to want to examine more closely the corporation's books and records. For example, the executive vice president of Ellipso told Sahagen that corporate funds were being used to pay for Castiel's personal defense in certain unspecified governmental investigations. Also, Sahagen related information conveyed to him that Castiel used corporate funds to pay for personal travel. Similarly, Sahagen said that several employees identified by him told him that Castiel had spent $48,000 of the corporation's money to buy a computer that was not worth more than $8,000 from a company run by a personal friend of Castiel. Sahagen was unsure when this alleged purchase took place.[11]

4. 8 Del. C. § 220(b); *CM & M Group, Inc. v. Carroll,* Del.Supr., 453 A.2d 788, 792 (1982).

5. 8 Del. C. § 220(b).

6. *Thomas & Betts Corp. v. Leviton Mfg. Co.,* Del.Supr., 681 A.2d 1026, 1030 (1996).

7. Del. Ch., 386 A.2d 674, 678 (1978)

8. *Security First Corp. v. U.S. Die Casting & Dev. Corp.,* Del.Supr., 687 A.2d 563, 567 (1997).

9. *Id.* at 568.

10. *Id.* at 567.

11. The record also contains some very unfocused testimony both by deposition and at

At trial, Ellipso suggested that SSTG's actual or true purpose in making the demand is an improper one of gaining leverage over Castiel in negotiations over the purchase of Castiel's stock in both Ellipso and a related entity. And, the evidence at trial showed that SSTG first made an inspection demand on Ellipso immediately after Castiel rejected Sahagen's offer to buy him out. Sahagen testified at trial that this was "absolutely not" SSTG's real purpose in making the demand. Rather, SSTG's real purpose, according to him, was to investigate the reasons for Ellipso's quickly deteriorating financial condition and the concerns about mismanagement described above.

On the basis of the limited trial record on this issue, I reject the argument that SSTG's primary purpose in demanding inspection was to harass Ellipso or Castiel. Rather, I am satisfied that Sahagen and SSTG were genuinely concerned with what they regard as corporate mismanagement. The fact that SSTG and Sahagen are engaged in conflict with Castiel does not, in and of itself, support a conclusion that SSTG's purpose in seeking inspection of corporate books and records is improper or is intended to gain some unfair advantage in dealings with Castiel.[12] Rather, if there is a connection between the demand for books and records and SSTG's hostility to Castiel or its efforts to obtain control of Ellipso, it stems from the fact that the same concern for possible mismanagement at Ellipso animates them both.

Nevertheless, SSTG did not carry its burden of proof at trial with respect to a number of the specific items of suspected mismanagement it seeks to investigate. For example, SSTG did not adduce credible evidence to support the inference that Castiel has used corporate assets for his personal travel, or that corporate funds have been spent improperly in defending Castiel in connection with one or more governmental investigations. For this reason, I am unable to conclude from the scant evidence presented that SSTG has sustained its burden of proof to justify the wide-ranging scope of inspection it seeks. SSTG adduced enough evidence to justify its inspection of documents relating to the purchase of computer equipment. But SSTG is not seeking to inspect (in any discrete way) documents relating to that transaction. Instead, it relies on proof of that incident to justify its broader purpose of looking throughout Ellipso's records for evidence of mismanagement or waste. This broader purpose does not find adequate support in the record.

There is authority for the proposition that, where a plaintiff has sustained its burden of showing sufficient evidence of widespread mismanagement or waste, its right of inspection will not be limited to the specific items it was able to identify in its demand. In *Skoglund v. Ormand Industries, Inc.,*[13] a case relied on by SSTG, the plaintiffs sought to review all of the board minute books and financial records of the corporate defendant for a period of three years. The demand letter in that case identified, in addition, seventeen other categories of documents dealing with specific events or items culled from the public

---

trial relating to Ellipso's alleged failure to take advantage of "corporate opportunities." Suffice it to say that this testimony does not amount to a credible showing that there are legitimate issues of wrongdoing justifying a wide-ranging inspection of Ellipso's books and records.

**12.** Ellipso did not produce any witness at trial to testify about the other contacts between Castiel and Sagahen or his agents. Rather, Ellipso limited itself to cross-examining Sagahen, a tactic that produced little or no probative evidence to support Ellipso's theory of improper motive.

**13.** Del. Ch., 372 A.2d 204 (1976).

record or learned from a corporate insider, which plaintiffs argued showed specific instances of corporate mismanagement or waste. At trial, the defendant corporation chose not to oppose plaintiffs' demand with respect to the seventeen specific items (which the court found were borne out by the evidence, in any event) but continued to resist "a general inspection of the corporation's minutes and financial records" relating to the relevant time span.[14]

The court in *Skoglund* concluded that the plaintiffs were entitled to conduct the more general inspection they sought, as follows:

> While [the company's position] might not be an inappropriate position to take and might well be one with which the Court would agree were the demand addressed to an isolated transaction, such as the sale of a corporate asset or a pending merger ... it cannot be overlooked that the reason for the demand here is to investigate the likelihood of general corporate mismanagement and improper transactions, a purpose which warrants inspection of books and records under our decisional law.[15]

The difference between this case and *Skoglund* is that SSTG's trial evidence did not show the likelihood of the same sort of systemic problems that were shown to exist in *Skoglund.* Thus, plaintiff failed to prove that it has a proper purpose of undertaking a broad ranging investigation of mismanagement or waste.

## IV.

The same problem of scope or specificity was an obstacle to SSTG in meeting its burden at trial of proving, by a preponderance of the evidence, that the categories of books and records it seeks are "essential and sufficient" to its stated purpose.[16] Indeed, SSTG eschewed both the burden and the ability to state its demand more narrowly. Instead, again relying on the *Skoglund* decision, SSTG argues that it cannot tailor its request more narrowly because (i) the few instances of mismanagement of which it is aware "are likely only the tip of the iceberg" and a broad review of financial records "is likely to reveal substantial additional evidence of mismanagement;" (ii) however, because Castiel exercises tight control over Ellipso's financial records, SSTG "does not know when these other instances occurred or what the nature of the improper expenditures was, or where the evidence of this mismanagement may be hidden."

Thus, SSTG argues it is entitled to inspect all of Ellipso's financial records because "[o]nly by looking at records of *all* of the Company's financial transactions can SSTG get a clear and comprehensive pic-

---

14. *Id.* at 210.

15. *Id.* at 210–11 (citations omitted).

16. *Thomas & Betts Corp. v. Leviton Mfg. Co.,* Del.Supr., 681 A.2d 1026, 1035 (1996); *Helmsman Management Servs., Inc. v. A & S Consultants, Inc.,* Del. Ch., 525 A.2d 160, 168 (1987). Ellipso also seizes on language found in *dicta* in opinions of the Delaware Supreme Court describing § 220 proceedings as requiring identification of the documents sought "with rifled precision." *Security First Corp.,* Del.Supr., 687 A.2d at 570 (1997); *Brehm v. Eisner,* Del.Supr., 746 A.2d 244, 266 (2000). I do not understand either of these decision to have altered the law as to the scope of books and records examinations under Section 220. *Security First Corp.* involved a claim under § 220 and applied the familiar standard in finding that "plaintiff has not met its burden of proof to establish that each category of books and records requested is essential and sufficient to its stated purpose." Del.Supr., 687 A.2d at 570 (1997). In *Brehm,* the court pointed to the availability of relief under § 220 as a possible route plaintiffs could pursue to obtain enough information to amend their complaint to meet the requisite specificity. No issue arising under § 220 was decided.

ture of the Company's history and of the extent of Castiel's mismanagement.... Further, SSTG cannot meaningfully evaluate Castiel's rejection (or failure to pursue) investment offers and business opportunities without knowing the Company's financial condition at the time those offers were made."

Ultimately, plaintiff's plea for wide-ranging access to Ellipso's books and records fails because the record does not show "a credible basis to find" a sufficiently broad pattern of "probable wrongdoing on the part of corporate management."[17] In the absence of such a showing, plaintiff's broadly written demand for access to "all financial books and records of the Company ... from 1991 through the present" is simply a demand for a fishing license and cannot succeed.

## V.

Although I conclude that SSTG is not entitled to the broad inspection it seeks, it has established its right to a more limited inspection. Thus, I will enter an Order granting SSTG the right to inspect the following categories of Ellipso documents:

- Periodic financial statements of Ellipso for all periods beginning January 1, 1999, including monthly statements for any such period for which no quarterly or annual statement is available.
- Documents relating to the purchase of computer equipment by Ellipso from Anderson Consulting Services.

Plaintiff's counsel shall submit an Order on notice within 10 days.

**17.** *Security First Corp.,* Del.Supr., 687 A.2d at 567 (1997).