IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| MICHAEL FERRIS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2018-0112-MTZ |
| | ) | |
| FERRIS PROPERTIES, INC., | ) | |
| LEXELL, LLC, EMERLEX, LLC, | ) | |
| and LIGHTHOUSE | ) | |
| MANAGEMENT GROUP, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

AND NOW, this 12th day of November 2020, upon consideration of the cross-motions for summary judgment filed by Plaintiff and Defendants, as briefed, it is hereby ORDERED that:

1. Plaintiff's Motion is **GRANTED**, and Defendants' Motion is **DENIED**.

2. Defendants have agreed to provide Plaintiff with access to the requested books and records and have therefore waived any argument that the records Plaintiff seeks are not necessary and essential to his proper purposes.[1]   Accordingly,

---

[1] *See* Docket Item ("D.I.") 47 at 1 ("[T]he parties have narrowed the issues such that the only issue to be resolved between them is the manner in which Defendants' books and records are made available to the Plaintiff for inspection, which the parties agree is a legal

1

Defendants are compelled to produce the specific documents Plaintiff requested in his demand letter sent pursuant to 8 *Del. C.* § 220 and 6 *Del. C.* § 18-305.

3. The sole issue remaining for decision on the parties' cross-motions is "the manner in which documents shall be produced."[2] With respect to Defendants' paper files, the parties agree that the Court has "latitude" to determine the proper process for inspection.[3] They dispute which party must bear the burden of locating the specific documents Plaintiff has requested. Defendants wish to avoid the burden of locating the specific records Plaintiff seeks within their paper files. Defendants believe Plaintiff should inspect *all* of their paper files, in the form of 65 bankers' boxes, at Defendants' attorneys' offices, and copy the responsive documents at his expense. Plaintiff asks the Court to compel Defendants to produce the specific documents sought.

---

issue."); D.I. 50 at 1–2 ("[T]he parties have agreed that there are no material issues of fact remaining and so requested that the remaining controversy concerning the manner in which documents shall be produced . . . ."); D.I. 53 at 18 ("Here, Plaintiff seeks documents from the Defendants that are not related to his stated purposes in this action, yet Defendants are still willing to allow such documents to be reviewed by Plaintiff."). And to the extent Defendants argue that Plaintiff seeks documents that are not "relevant," I do not address that contention, as Defendants have waived such a claim by conceding "to allow Plaintiff to see and copy any corporate documents he wishes." *See* D.I. 53 at 16.

[2] D.I. 50 at 1–2; *see also* D.I. 53 at 11 ("What remains in dispute is whether Defendants are obligated to search their own files for the remaining documents requested by the Plaintiff or whether Defendants may, as the plain language of both statutes state, make their business records available for inspection as same are maintained by Defendants, and allow Plaintiff to copy those records he seeks.").

[3] D.I. 53 at 19.

4.      Defendant Ferris Properties, Inc. is a corporation subject to 8 *Del. C.* § 220.  Where a stockholder has met the governing requirements, Section 220(b) enshrines the stockholder's "right during the usual hours for business to inspect for any proper purpose, and to make copies and extracts from" the corporation's books and records.[4]  This statutory right originated from stockholders' common law right to examine the corporation's books and records and make extracts from them.  The stockholder's right is consistently phrased as a right of "inspection," not a right of "production."

5.      The remaining Defendants are limited liability companies, and so Plaintiff seeks inspection of their books and records under 6 *Del. C.* § 18-305.  That statute empowers Plaintiff, as a member of those Defendants, "to obtain from the limited liability company from time to time upon reasonable demand" certain information, and permits Defendants or their managers to "set forth in a limited liability company agreement" or "otherwise establish[]" "standards governing what information and documents are to be furnished at what time and location and at whose expense."

6.      No limited liability company agreement has been furnished to the Court;[5] no such standards are evident.  "Nor is there any evidence that [Defendants']

---

[4] 8 *Del. C.* § 220(b).

[5] *See* D.I. 53, Ex. 1; D.I. 54, Exs. A–E; D.I. 55, Ex. 1; D.I. 57, Ex. F.  The only agreement appearing in the record is a "Business Separation Agreement" dated November 20, 2012.

managers have established any standards to govern a member's exercise of inspection rights."[6]  "Therefore, the scope of [Plaintiff's] inspection rights is co-extensive with Section 18-305 of the LLC Act."[7]  In the absence of an LLC Agreement circumscribing a member's inspection rights, "Delaware courts have interpreted Section 18-305 by looking to cases interpreting similar Delaware statutes concerning corporations."[8]  And so here, where "[t]he parties have not drawn any distinction between the rights [Plaintiff] may enjoy as a stockholder of [Ferris Properties, Inc.] and the rights he may enjoy as a member of [the other Defendants]," the Court "will not draw any distinction . . . between [Plaintiff's] inspection rights as a stockholder as opposed to his rights as a member."[9]  Accordingly, Plaintiff

---

*See* D.I. 54, Ex. A.  That document does not reference any governing limited liability company agreements for the non-corporate entity Defendants.  *See id.*  And although Plaintiff requested "[c]opies of the filed-stamped Certificates of Formation/Incorporation (including any amendments thereto), and bylaws/LLC Agreements (including any amendments thereto), as applicable," D.I. 54, Ex. B at Ferris 000111, Defendants did not submit any such agreements on summary judgment.

[6] *Sanders v. Ohmite Hldgs., LLC*, 17 A.3d 1186, 1193 (Del. Ch. 2011).

[7] *Id.*

[8] *Id.* (quoting *Somerville S Tr. v. USV P'rs, LLC*, 2002 WL 1832830, at *5 n.4 (Del. Ch. Aug. 2, 2002) (citing cases applying 8 *Del. C.* § 220, the corporate-law counterpart to 6 *Del. C.* § 18-305, to interpret Section 18-305)); *accord Bizzari v. Suburban Waste Servs., Inc.*, 2016 WL 4540292, at *5 (Del. Ch. Aug. 30, 2016) ("[T]his Court treats Section 220, and the cases interpreting it, as the corporate analogue to inspection rights under Section 18-305 of the LLC Act.").

[9] *Bizzari*, 2016 WL 4540292, at *5.

4

enjoys a right of inspection, rather than a right of production, with respect to the alternative entity Defendants' books and records.

7. The conclusion that Plaintiff enjoys an inspection right does not end the inquiry. Other principles of law inform the appropriate manner of inspection. First, the scope of the inspection should be circumscribed with precision and limited to those documents that are necessary, essential, and sufficient to the stockholder's purpose. As the Delaware Supreme Court stated in *KT4 Partners LLC v. Palantir Technologies Inc.*,

> Keeping in mind that § 220 inspections are not tantamount to comprehensive discovery, the Court of Chancery must tailor its order for inspection to cover only those books and records that are essential and sufficient to the stockholder's stated purpose. In other words, the court must give the petitioner everything that is essential, but stop at what is sufficient. In other decisions, we have referred to the set of books and records that are essential and sufficient as those that are "necessary." To wit, in *Saito v. McKesson HBOC, Inc.*, we wrote that a stockholder with a proper purpose "should be given access to all of the documents in the corporation's possession, custody or control, *that are necessary to satisfy that proper purpose*."[10]

---

[10] 203 A.3d 738, 751–52 (Del. 2019) (emphasis added) (footnotes and internal quotation marks omitted) (quoting *Sec. First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d 563, 570 (Del. 1997), and then quoting *Thomas & Betts Corp. v. Leviton Mfg. Co.*, 681 A.2d 1026, 1035 (Del. 1996), and *Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 775 (Del. Ch. 2016), *abrogated on other grounds by Tiger v. Boast Apparel, Inc.*, 214 A.3d 933 (Del. 2019), and also quoting *Saito v. McKesson HBOC, Inc.*, 806 A.2d 113, 114–15 (Del. 2002)).

Further, contrary to Defendants' position,[11] "[Section 220 proceedings and Rule 34 discovery] are not the same and should not be confused. A Section 220 proceeding should result in an order circumscribed with rifled precision. Rule 34 production orders may often be broader in keeping with the scope of discovery under Court of Chancery Rule 26(b)."[12]

8. Accordingly, inspection orders must deploy "rifled precision."[13] The Court's order must grant Plaintiff "access to all of the documents in the corporation's possession, custody or control, that are necessary to satisfy [the plaintiff's] proper purpose,"[14] "but should stop at the quantum of information that the court deems sufficient[:]" "the production order must be carefully tailored."[15] And so this Court has ordered that the defendant "shall produce [books and records] falling within the categories for which inspection is permitted" "that the Demand requested."[16]

---

[11] *See* D.I. 53 at 19.

[12] *Sec. First Corp.*, 687 A.2d at 570 (reversing and remanding Court of Chancery's scope determination in a books and records case where "[t]he scope of the production which the Court of Chancery ordered . . . [wa]s more akin to a comprehensive discovery order under Court of Chancery Rule 34 than a Section 220 order").

[13] *Espinoza v. Hewlett-Packard Co.*, 32 A.3d 365, 372 (Del. 2011) ("In making that 'scope of relief' determination, our courts must circumscribe orders granting inspection with *rifled precision.*" (internal quotation marks omitted) (emphasis in original)).

[14] *Lebanon Cty. Empls.' Ret. Fund v. Amerisourcebergen Corp.*, 2020 WL 132752, at *24 (Del. Ch. Jan. 13, 2020).

[15] *Amalgamated Bank*, 132 A.3d at 775 (internal quotation marks omitted) (quoting *Thomas & Betts Corp.*, 681 A.2d at 1035, and then quoting *Sec. First Corp.*, 687 A.2d at 565).

[16] *Amerisourcebergen Corp.*, 2020 WL 132752, at *24.

9. The second governing principle is found in Section 220(c): "[t]he Court may, in its discretion, prescribe any limitations or conditions with reference to the inspection, or award such other or further relief as the Court may deem just and proper."[17]

10. Here, Defendants' proposal to allow Plaintiff to review all of their records in search of the ones he seeks obviates the requirement that Plaintiff's inspection be circumscribed with precision and limited to those documents that are necessary, essential and sufficient to his purpose.[18] Ordering Defendants' proposed overproduction would go far beyond the "the quantum of information that the court deems sufficient"[19] and be "more akin to a comprehensive discovery order under Court of Chancery Rule 34 than a Section 220 order."[20] At bottom, ordering Plaintiff to sift through dozens of boxes in search of those documents that are necessary and essential to his stated purpose would make the exercise of his statutory right unduly burdensome.

---

[17] 8 *Del. C.* § 220(c).

[18] *See KT4 P'rs LLC*, 203 A.3d at 751–52; *Amalgamated Bank*, 132 A.3d at 775; *Sec. First Corp.*, 687 A.2d at 570; *Thomas & Betts Corp.*, 681 A.2d at 1035.

[19] *Amalgamated Bank*, 132 A.3d at 775 (internal quotation marks omitted) (quoting *Thomas & Betts Corp.*, 681 A.2d at 1035).

[20] *Sec. First Corp.*, 687 A.2d at 570.

11.     Applying the requirement that my order be tailored with "rifled precision" to Plaintiff's right of inspection,[21] I conclude that Defendants must identify those documents responsive to Plaintiff's requests, but may make those documents available for Plaintiff's inspection and copying at Defendants' counsel's office.    In addition to the paper documents, Defendants shall produce the QuickBooks file they agreed to produce within five (5) business days.[22]

**IT IS SO ORDERED.**

<i>/s/ Morgan T. Zurn</i>

Vice Chancellor Morgan T. Zurn

---

[21] *Espinoza*, 32 A.3d at 372.

[22] *See* D.I. 53 at 11.