**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| CEZARY PIETRASIK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2022-1069-LM |
| | ) | |
| KRAUS HAMDANI AEROSPACE, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

**FINAL REPORT ADDRESSING
REMANDED EXCEPTIONS**

WHEREAS:

A.    Plaintiff Cezary Pietrasik is a stockholder and former employee of Kraus Hamdani Aerospace, Inc. (the "Company").[1] Pietrasik served a demand to inspect books and records pursuant to 8 Del. C. § 220 on the Company on October 17, 2022.

B.    On August 4, 2023, I presided over a one-day trial via Zoom and subsequently delivered a final report (the "Final Report") recommending denial of inspection beyond the books and records that the Company had already provided finding Plaintiff's primary purpose was pretexual to his stated purpose of investigating wrongdoing.[2]  Rather, my findings concluded that Plaintiff's primary

---

[1] Dkt. 30 ("PTO") ¶ 1.

[2] D. I. 49 ("Final Report").

purpose of inspection was to prepare for his "personal lawsuit" against Fatema Hamdani.[3]

C. On August 9, 2023, Pietrasik filed a notice of exceptions from the Final Report (the "Exceptions").[4] The Plaintiff challenged two of my findings on exceptions.[5] First, my finding that plaintiff's purpose was pretextual to an improper purpose of suing Ms. Hamdani personally; and second, my determination that pursing personal litigation against Ms. Hamdani was improper under Section 220.[6]

D. Chancellor McCormick reassigned this action to Vice Chancellor Fioravanti for the limited purpose of resolving the Plaintiff's exceptions to the Final Report.[7] Vice Chancellor Fioravanti concluded that he could proceed without further hearings because the entire trial was conducted via Zoom and was recorded.[8]

E. When a litigant takes exceptions to a Magistrate's report, "the Court of Chancery reviews the [Magistrate's] findings—both factual and legal—de novo."[9]

---

[3] *Id*. at 11.

[4] D. I. 44.

[5] *Id*.

[6] *Id*.

[7] D.I. 45.

[8] D. I. 58 ("Order Addressing Exceptions").

[9] *Hauppauge Digital, Inc. v. Rivest*, 300 A.3d 1270 (Del. 2023) (ORDER).

F.     After having considered the exceptions and having conducted a *de novo* review of the record, the Vice Chancellor found that Plaintiff's primary purpose in seeking to inspect the Company's books and records was not an improper purpose.[10] The Vice Chancellor granted the Plaintiff's Exceptions and declined to adopt the Final Report.  He also remanded this case back to me to determine the scope of Plaintiff's permitted inspection and the application for attorneys' fees under the bad faith exception to the American Rule.[11]

G.     This is my final report limited to determining those issues.

H.     Because the Vice Chancellor has determined the Plaintiff has satisfied the test for proper purpose, the next step is for this Court to determine the scope. "The scope of [] inspection is a separate issue on which plaintiff bears the burden of specific justification.*"*[12] "The Court may, in its discretion, prescribe any limitations or conditions with reference to the inspection."[13]  When tailoring the production order, the court must balance the interests of the stockholder and the corporation.[14]

---

[10] D.I. 58.

[11] *Id.*

[12] *Sec. First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d 563, 569 (Del. 1997).

[13] Del. Code Ann. tit. 8, § 220 (West).

[14] *Lebanon Cnty. Employees' Ret. Fund v. Amerisourcebergen Corp.*, 2020 WL 132752, at *24 (Del. Ch. Jan. 13, 2020), aff'd, 243 A.3d 417 (Del. 2020) (*citing* Sec. First, 687 A.2d at 569).

"The production of records in response to a Section 220 demand is not the equivalent of discovery in a plenary action."[15]

I.   "[W]here a § 220 claim is based on alleged corporate wrongdoing. . . the stockholder should be given enough information to effectively address the problem. . ."[16]  "[T]he court must give the petitioner everything that is 'essential,' but stop at what is 'sufficient.' "[17]

J.   "The scope of inspection is a fact-specific inquiry, and the court has broad discretion when conducting it."[18]  Furthermore, the plaintiff "bears the burden of proving that each category of records is essential to accomplishment of the stockholder's articulated purpose for the inspection."[19] "Books and records satisfy this standard 'if they address the *crux of the shareholder's purpose* and if that information 'is unavailable from another source.' "[20]

---

[15] *Sec. First*, 687 A.2d at 569.

[16] *Amerisourcebergen Corp.,* 2020 WL 132752, at *24 (*citing* Sec. First, 687 A.2d at 569).

[17] *Id*.

[18] *Hightower v. SharpSpring, Inc.*, 2022 WL 3970155, at *8 (Del. Ch. Aug. 31, 2022) (citing *NVIDIA Corp. v. City of Westland Police & Fire Ret. Sys.*, 282 A.3d 1, 26–27 (Del. 2022), as revised (July 25, 2022)).

[19] *KT4 Partners LLC v. Palantir Techs. Inc.*, 203 A.3d 738, 751 (Del. 2019) (internal quotation mark omitted).

[20] *Id* (quoting Wal–Mart Stores, Inc. v. Ind. Elec. Workers Pension Trust Fund IBEW, 95 A.3d 1264, 1271 (Del. 2014)) (internal quotation marks omitted).

K.     In *Amalgamated Bank*, Vice Chancellor Laster found that the stockholders demonstrated a credible basis to suspect breach of fiduciary duty, ordered inspection of related documents, and conditioned that inspection on the stockholder "agreeing that the entirety of the company's production in response to the Demand is incorporated by reference in any derivative action complaint it files relating to the subject matter of the demand…"[21]  The Vice Chancellor reasoned that "[i]mposing the condition helps balance [the company's] rights against those of the plaintiff by recognizing that the production as a whole should provide the basis for any follow-on complaint, not just a handful of isolated documents or emails[;]"[22]

**IT IS HEREBY ORDERED**, this 23rd day of February 2024, as follows:

1. Vice Chancellor Fioravanti found that Plaintiff's requested documents "target[] information which could prove that Hamdani mismanaged the Company by exposing it to liability as a government contractor and by misappropriating corporate assets."[23]  Thus where there remains a dispute regarding the scope of production, I am inclined to resolve that dispute by ordering production of those documents which remain outstanding from the original demand.

---

[21] *Amalgamated Bank*, 132 A.3d at 796, *abrogated in other part by Tiger v. Boast Apparel, Inc.*, 214 A.3d 933, 935 (Del. 2019).

[22] *Id.* at 798.

[23] VCF Order ⁋10.

2. Post-Trial, the following documents remained outstanding to the Demand:

   a. The Company's defenses contracts, including subcontracts, entered or modified from December 2020 to present;

   b. Pitch decks and related materials made or distributed in connection with any defenses contracts, including subcontracts, entered or modified from December 2020 to present;

   c. Investors decks, presentations, or updates made or distributed from December 2020 to present;

   d. Field performance reports and data on K1000ULE test flights run from December 2020 to present;

   e. Communications logs or similar information related to K1000ULE test flights run from December 2020 to present;

   f. Contracts, purchase orders, and payment records related to any manufacturer based in or operating from the Czech Republic from January 2021;

   g. Any security clearance applications or related forms, including but not limited to any Standard Form 328, submitted by the Company from December 2020 to present;

   h. Records or all payments made to Ms. Hamdani by the Company from December 2020 to present;

    i.  Records of compensation agreements entered by Ms. Hamdani and this Company from December 2020 to present;

    j.  Any subsidiary-level documents responsive to the above;

    k.  Electronic communications sent or received by Ms. Hamdani from December 2020 to present concerning any of the above-listed matters.[24]

3. "[T]he Court of Chancery must tailor its order for inspection to cover only those books and records that are "essential and sufficient to the stockholder's stated purpose."[25]  To determine which documents are necessary and essential to accomplish a proper purpose, recent decisions from this Court have grouped requests for books and records into three categories:

    a.  "Formal Board Materials," or "board-level documents that formally evidence the directors' deliberations and decisions and comprise the materials that the directors formally received and considered;"

    b.  "Informal Board Materials," which "generally will include communications between directors and the corporation's officers

---

[24] Pl. PTB at 20-21.

[25] *KT4 Partners LLC,* 203 A.3d at 751–52 (quoting *Thomas & Betts Corp. v. Leviton Mfg. Co.,* 681 A.2d 1026, 1035 (Del. 1996)).

and senior employees, such as information distributed to the directors outside of formal channels, in between formal meetings, or in connection with other types of board gatherings," and sometimes including "emails and other types of communication sent among the directors themselves;" and

c. "Officer-Level Materials," which are "communications and materials that were only shared among or reviewed by officers and employees."[26]

4. Much of this demand, seeks Board Level Materials to which in many organizations, the corporate secretary maintains a central file for each board meeting in either paper or electronic form. The demand also includes requested documents which exceed Board Level Materials, which request communications and documents limited to the relevant proper purpose of investigating wrongdoing. Therefore, I recommend the production of the following requested document categories:[27] a (excluding

---

[26] *Hightower*, 2022 WL 3970155, at *9 (quoting *Lebanon Cnty. Emps.' Ret. Fund*, 2020 WL 132752, at *25).

[27] Although Plaintiff's Demand is numbered and contains subcategories identified by letters, with only certain demands remaining outstanding, I am only referring to the categories of documents identified in Plaintiff's Post-Trial Brief. Although the Post-Trial Brief identified the documents by bullet points and not numbers or letters, for purposes of clarity, I have identified them by letters in this report.

classified documents), b, c, d, e, f (excluding classified documents), g (to the extent unclassified documents in this category are available), i, and j. These documents relate to Plaintiff's purpose to prove that Hamdani mismanaged the Company by exposing it to liability as a government contractor and by misappropriating corporate assets.

5. With respect to subcategory "a" as noted above, Plaintiff has credibly shown that the defense contract itself isn't typically confidential.[28] To the extent that it is, the Company should produce evidence thereof in accordance with this order.

6. With respect to subcategory "h", which corresponds with Plaintiff's Demand No. 8, Plaintiff seeks the records of all payments made to Ms. Hamdani by the Company from December 2020 to present. Given the Company's assertion in its Post-Trial briefing that it has "agreed to make available for inspection its financial statements for fiscal years 2020, 2021, and 2022," [29] I am in agreement that the financial statements should provide Plaintiff with sufficient information on payments made to Ms. Hamdani from the Company.

---

[28] Pl. PTB at 25.

[29] Def. PTB at 34-35.

7. With respect to subcategory "k", Plaintiff's Demand seeks electronic communications sent or received by Ms. Hamdani concerning the matters outlined in the Demand. Plaintiff argues he is entitled to emails because the board-level materials would be insufficient, and key communications took place informally.[30] "[T]he court must give the petitioner everything that is "essential," but stop at what is "sufficient."[31] Plaintiff's Pre-Trial Brief explains that key communications took place informally in "Musketeers[32] meetings,"[33] however at trial, Plaintiff failed to prove that key communications, related to his Demand, took place during these "Musketeer meetings" and were subsequently discussed over email.[34] Additionally, Plaintiff fails to meet his burden that the information in Ms. Hamdani's emails from December 2020 to the present, concerning the Demand, is the only method to obtain this information.[35]

---

[30] Pl. PTB at 12-13.

[31] *KT4 Partners LLC v. Palantir Techs. Inc.,* 203 A.3d 738, 752 (Del. 2019) (quoting *Amalgamated Bank,* 132 A.3d at 775 ("The order should permit access to books and records that are 'essential' for the plaintiff to achieve its purpose, but should stop at the quantum of information that the court deems 'sufficient.' " (internal quotation marks omitted)).

[32] At trial, Plaintiff testified that the "Musketeers" referred to the Plaintiff, Ms. Hamdani, and Stefan Kraus; Tr. 52:22-24.

[33] Pl. PTB at 12-13.

[34] Tr. 29:13-32:3.

[35] KT4 Partners LLC v. Palantir Techs., Inc., 203 A.3d 738, 753 (Del. 2019).

Instead, it appears from the wording in the Post-Trial Brief, that the emails serve to merely supplement the categories in the Demand and it's not a matter of the traditional board level-materials being insufficient.

8. Looking at the issue about potentially classified documents between the Company and the United States, I find that Defendant has not established by preponderance of the evidence that the requested information is subject to any federal security clearance. Nevertheless, this Court lacks authority to require the Defendant to produce classified documents. Should Defendant uncover any such document, the Company should submit supporting documentation thereof within seven (7) calendar days of this order or immediately upon identification of such relevant document.

9. Neither party requests a limiting confidentiality order here, as such, I do not impose one. Instead, I condition the entirety of the Company's production in response to the Demand as incorporated by reference in any relative derivative action Plaintiff files relating to the subject matter of the demand. Like the Vice Chancellor, I aim to "balance [the company's] rights against those of the plaintiff by recognizing that the production as a whole should provide the basis for any follow-on complaint, not just a handful of isolated documents…"

11

10. With respect to Plaintiff's request to shift fees, I hereby DENY Plaintiff's request. "Delaware courts follow the American Rule that 'each party is generally expected to pay its own attorneys' fees regardless of the outcome of the litigation.'"[36] An exception exists in equity, however, when a party litigates in bad faith.[37] Given the nature of Plaintiff's proper purpose, and the Company's need to investigate whether it was valid, I don't find the Company acted in bad faith in not producing the demanded books and records, whereby the American Rule on attorneys' fees would be disregarded and fees shifted in Plaintiff's favor. Having originally disagreed with Plaintiff's presentation of its suspicion of wrongdoing, I cannot, in good faith, find the Company acted in bad faith by denying the demand and proceeding to litigation on the matter.

**IT IS SO ORDERED.**

/s/ Loren Mitchell
Magistrate in Chancery

---

[36] *Pettry v. Gilead Scis., Inc.*, 2020 WL 6870461, at *29 (Del. Ch. Nov. 24, 2020) (quoting *Shawe v. Elting*, 157 A.3d 142, 149 (Del. 2017)).

[37] *Rice v. Herrigan-Ferro*, 2004 WL 1587563, at *1 (Del. Ch. July 12, 2004).