No. 87,278

ARCTIC FINANCIAL CORPORATION, *Appellant*, v. OTR EXPRESS, INC., *Appellee*.

(38 P.3d 701)

*Mick W. Lerner*, of Law Office of Mick Lerner, P.A., of Overland Park, argued the cause and was on the brief for appellant.

*Robert J. Hoffman*, of Humphrey, Farrington, McClain & Edgar, P.C., of Independence, Missouri, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

BRAZIL, J.: Arctic Financial (Arctic) is a New Jersey corporation. It is a shareholder in OTR Express, Inc. (OTR), a Kansas corporation. In this stockholder's action under K.S.A. 17-6510, for inspection of corporate books and records, the district court dismissed Arctic's case following OTR's motion for summary judgment, finding that Arctic failed to prove a proper purpose for inspection. Arctic appeals.

On February 25, 2000, Arctic served OTR a written demand for inspection of the by-laws, stock register, list of shareholders, records of the proceedings of the stockholders and of the directors, and other unidentified books and records.

Arctic's stated purpose for the inspection was:

"[T]o inspect and/or copy the information requested in order to more closely examine management's effectiveness in dealing with the volatile trucking industry environment and the recent turmoil in OTR's management, and to ascertain whether or not there are large voting blocks of shareholders that may be hindering effective management."

Arctic's petition alleged that OTR refused to permit the above request and asked the court to order OTR to comply. OTR alleged in its answer it had already allowed Arctic access to OTR's stock ledger.

OTR subsequently filed a summary judgment motion and memorandum in support on November 22, 2000. It argued that Arctic failed to show a proper purpose for inspection. Arctic filed its memorandum opposing OTR's summary judgment motion along with an affidavit, deposition testimony, and other documentary evidence. The district court granted OTR summary judgment on April 24, 2001.

Arctic first argues that the district court erred in finding its demand for inspection failed to state a proper purpose.

Kansas law gives shareholders the right to inspect corporate books and records:

"(b) Any stockholder . . . shall have the right . . . to inspect *for any proper purpose* the corporation's bylaws, stock register, a list of its stockholders, books of account, records of the proceedings of the stockholders and directors and the corporation's other books and records, and to make copies or extracts therefrom." (Emphasis added.) K.S.A. 17-6510(b).

The statutes define "proper purpose" as "a purpose reasonably related to such person's interest as a stockholder." K.S.A. 17-6510(b). The issue in the present case is whether Arctic's purpose is a proper purpose.

In the event the corporation refuses the shareholder's demand, the statute provides for a judicial remedy:

"(c) If the corporation . . . refuses to permit an inspection sought by a stockholder . . . pursuant to subsection (b) . . . the stockholder may apply to the district court for an order to compel such inspection. The district court is hereby vested with exclusive jurisdiction to determine whether or not the person seeking inspection is entitled to the inspection sought." K.S.A. 17-6150(c).

The statute grants the district court the "exclusive jurisdiction to determine whether or not the person seeking inspection is entitled to the inspection sought." K.S.A. 17-6510(c). Furthermore, the statute provides the district court *"in its discretion*, may prescribe any limitations or conditions." (Emphasis added.) K.S.A. 17-6510(c).

The statute also assigns the burden of proof, distinguishing between corporate books and records on one hand and the corporation's stock ledger and list of stockholders on the other hand. K.S.A. 17-6510(c). As discussed above, OTR's answer alleged it had already furnished its stock ledger to Arctic, thus, the burden of proof is on Arctic:

"Where the stockholder seeks to inspect the corporation's books and records, other than its stock ledger or list of stockholders, such stockholder shall first establish (1) that such stockholder has complied with the provisions of this section respecting the form and manner of making demand for inspection of such doc-

uments; and (2) that the inspection such stockholder seeks is for a proper purpose." K.S.A. 17-6510(c).

In the absence of Kansas cases construing K.S.A. 17-6510, we do not hesitate to consider Delaware case law. As this court noted in *Arnaud v. Stockgrowers Bank*, 268 Kan. 163, 165, 992 P.2d 216 (1999), "Kansas courts have a long history . . . of looking to the decisions of the Delaware courts involving corporation law, as the Kansas Corporation Code was modeled after the Delaware Code."

*Security First v. U.S. Die Casting & Development*, 687 A.2d 563 (Del. 1997), provides some guidance in defining what constitutes a proper purpose under its comparable statute, Del. Code Ann. tit. 8, § 220. The corporation, Security First, was a bank holding company. The shareholder, U.S. Die, demanded to inspect Security First books and records relating to a failed merger agreement between Security First and another bank holding corporation.

The court began its analysis by stating the circumstances under which a shareholder relying on the proper purpose of mismanagement will be entitled to inspection:

"It is well established that investigation of mismanagement is a proper purpose for a Section 220 books and records inspection. A stockholder's entitlement to inspection of corporate books and records depends on whether or not a credible basis to find probable wrongdoing on the part of corporate mismanagement has been established. At the trial of a summary proceeding under Section 220(d), the plaintiff must show the credible basis by a preponderance of the evidence. The actual wrongdoing itself need not be proved in a Section 220 proceeding, however." 687 A.2d at 567.

Responding to the corporation's argument that the stockholder failed to produce any actual evidence of mismanagement, the court stated:

"In a Section 220 action, a stockholder has the burden of proof to demonstrate a proper purpose, but a stockholder is 'not required to prove by a preponderance of the evidence that waste and [mis]management are actually occurring.' The threshold for the plaintiff in a Section 220 case is not insubstantial. Mere curiosity or a desire for a fishing expedition will not suffice. But the threshold may be satisfied by a credible showing, through documents, logic, testimony or otherwise, that there are legitimate issues of wrongdoing." 687 A.2d at 568.

U.S. Die asserted three aspects of alleged mismanagement. First, that Security First paid Mid Am $275,000 following the failed merger when, according to U.S. Die, a payment above $250,000 was not contemplated by the merger agreement. Second, Security First agreed in the merger termination agreement to pay Mid Am money contingent on "certain occurrences," which according to U.S. Die, would either take Security First "out of play" or diminish the shareholders' value. 687 A.2d at 568. Third, management had increased a dividend to "ameliorate" shareholder anger over the drop in stock price following the failed merger. 687 A.2d at 568-69.

The *Security First* court deferred to the lower court's witness credibility determination and, therefore, accepted the proposition that U.S. Die had presented a proper purpose based on the above allegations. 687 A.2d at 569.

It should be noted, the *Security First* court went on to evaluate the lower court's scope of inspection order, finding the lower court's order allowing inspection was overly broad. 687 A.2d at 570. ("We find that plaintiff has not met its burden of proof on this record to establish that each category of books and records requested is essential and sufficient to its stated purpose.") Thus, the case was remanded for an adjustment of the scope of the inspection. 687 A.2d at 571.

In the present case, Arctic's demand identified Arctic as a shareholder of OTR and stated three areas of possible ineffective management as its purpose for wanting to inspect the books and records. Assuming ineffective management is the equivalent of mismanagement, it would be a proper purpose in Delaware. See *Security First*, 687 A.2d at 567. ("It is well established that investigation of mismanagement is a proper purpose for a Section 220 books and records inspection.")

Following Delaware law, mismanagement constitutes a proper purpose under K.S.A. 17-6510, entitling Arctic to an evidentiary hearing to show by a preponderance of the evidence, not mismanagement, but the possibility of mismanagement. Once that burden is met, the district court must determine the scope of the inspection to which Arctic is entitled.

However, unlike *Security First* that went to an evidentiary hearing, OTR filed a motion for summary judgment. OTR's motion asserted that Arctic's demand did not specify a proper purpose for the inspection; that the demand for inspection and Arctic's petition were inconsistent with Arctic's role as a shareholder; and that the demand did not identify, with any level of specificity, the documents Arctic was seeking.

Finally, OTR argued that Arctic's demand failed on its face to meet the requirements of K.S.A. 17-6510 and that OTR was entitled to judgment as a matter of law.

Both parties in their briefs on appeal concede the usual standard of review for civil summary judgment cases. That standard is well known:

"Summary judgment is appropriate when the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

Arctic argues the district court erred in granting summary judgment because genuine issues of material fact existed. The assumption, which is never explicitly argued by Arctic, is that the district court ignored the affidavit of Arctic's president, Raymond Povalski, and deposition testimony of Gary Klusman, a former officer of OTR. OTR argues in its brief on appeal that "[t]he motion for summary judgment could be, and properly was, decided based upon the face of Appellant's demand for inspection itself." The district court in its memorandum decision held:

"[Arctic] has failed to adduce specific evidence of mismanagement to support its demand for inspection of OTR's books, records, and records of proceedings and to sustain its burden that inspection is for a proper purpose. [Arctic] argues

that during this summary judgment proceeding it should be permitted to buttress its demand for inspection and cure any deficiencies in its initial complaint by adding additional allegations to support the possibility of mismanagement. Although *Thomas & Betts*, permitted an arguable technical deficiency in a shareholder's demand for inspection to be cured '[w]here the shareholder established its purpose with specificity in depositions, at trial, and in its posttrial memoranda,' this applied to only the inspection of the shareholder list. [Citation omitted.] Where the demand for inspection seeks books and record to investigate possible mismanagement, the evidentiary burden is greater than normal and it rests with the shareholder. [Citation omitted.] Without reciting a specific basis for its demand for inspection of books and records, Plaintiff has failed to meet this burden. Plaintiff's lack of specificity must result in its failure to make out a prima facie case of proper purpose for inspection of books and records. [Citation omitted.]"

The written district court decision never specifically addresses either the affidavit or the deposition testimony.

OTR is correct to note the shareholder's demand should contain the purpose of the demand for inspection. K.S.A. 17-6510(b). However, it is unclear why the evidence required to sustain the shareholder's burden of proof in K.S.A. 17-6510(c) need be included in the demand which is contemplated earlier in the statute at K.S.A. 17-6510(a). The plain reading of the statute requires the demand to state the purpose. K.S.A. 17-6510(b). The burden of proof on the shareholder is articulated in K.S.A. 17-6510(c) in the context of a hearing on the shareholder's request to get the district court to compel production of corporate records and books.

The district court cites to a chancery court opinion from Delaware, *Thomas & Betts Corp. v. Leviton Mfg. Co., Inc.*, 685 A.2d 702 (Del. Ch. 1995). We refer to it as *Thomas & Betts I*. The case was appealed to the Delaware Supreme Court and reported in 681 A.2d 1026 (Del. 1996). We refer to the Supreme Court decision as *Thomas & Betts II*. In *Thomas & Betts I*, the chancery court rejected the corporation's argument that the order for inspection should not be granted because the demand lacked specificity. 685 A.2d at 708. The court noted the depositions, trial testimony, and post-trial memoranda established a proper purpose. 685 A.2d at 708. The district court in the present case considered the reasoning in this opinion but rejected it, finding it inapplicable because the *Thomas & Betts I* court was considering the request to see stock-

holder lists. However, it is clear *Thomas & Betts I* did not confine its analysis to the four corners of the demand with respect to the inspection of corporate books and records: "Leviton responds that Thomas & Betts' waste and mismanagement claims are so lacking in *record support* that they cannot justify permitting it to inspect Leviton's, or its subsidiaries', books and records." 685 A.2d at 710.

Apparently, the *Thomas & Betts I* court disagreed that the record supported a finding that the corporation suffered from mismanagement, but that does not mean the court did not consider what the record contained. Thus, it is not clear what authority the district court in this case could have relied upon to exclude consideration of the affidavit and deposition testimony. Furthermore, a review of *Thomas & Betts II* shows that the court did not limit itself to the four corners of the demand for proof of a proper purpose. See 681 A.2d at 1032 (relying on lower court's judgment of witness credibility).

Unfortunately, the district court also relied on *Thomas & Betts I* to impose a higher burden of proof upon Arctic to justify its right to inspect the books and records: "Where the demand for inspection seeks books and record to investigate possible mismanagement, the evidentiary burden is greater than normal and it rests with the shareholder. *Thomas & Betts, supra* 685 A.2d at 710."

The *Thomas & Betts II* court disapproved of that language in *Thomas & Betts I*: "The Court of Chancery *incorrectly* articulated the governing legal standard." (Emphasis added.) 681 A.2d at 1031. The court further explained that "[a] general standard that a stockholder seeking inspection of books and records bears 'a greater-than-normal evidentiary burden' is unclear and could be interpreted as placing an unduly difficult obstacle in the path of stockholders seeking to investigate waste and mismanagement." 681 A.2d at 1031-32. Rather, the Delaware court called the burden of proof a normal one. 681 A.2d at 1028.

OTR argues it would "completely undermine the form and manner requirements of K.S.A. 17-6510 as well as the corporate-review mechanism of the statute if a stockholder was permitted to amend or supplement his demand for inspection after the corporation has passed upon the demand and the stockholder has brought suit to

enforce it." It is not clear why this would be the case. First, K.S.A. 17-6510(b) merely requires notice of a proper purpose in the demand. Second, it is not clear what incentive a stockholder would have to trick a corporation into rejecting an otherwise allowable demand and, thus, forcing a lawsuit to compel inspection. On the contrary, the stockholder would have every incentive to provide sufficient notice of the proper purpose to avoid these suits. Determination of the scope would require a balance of the rights of the shareholder against the rights of the corporation. The purpose of an action under K.S.A. 17-6510 is not to expose the corporation to a shareholder fishing expedition. See *Security First*, 687 A.2d at 571.

We reverse and remand with directions that the district court consider Arctic's evidence and determine if Arctic has demonstrated, by a preponderance of the evidence, a proper purpose to justify its inspection of the books and records. If the court finds Arctic presents a proper purpose, the court may exercise its discretion in carefully limiting the inspection rights in a way that corresponds to the established purpose of the shareholder.

Reversed and remanded with directions.

DAVIS, J., not participating.

BRAZIL, Chief Judge Retired, assigned.