(128 P.3d 993)
No. 94,192

CHARLES IHRIG, GRACE IHRIG, AND CIRCLE BAR RANCH COMPANY, *Appellants*, v. FRONTIER EQUITY EXCHANGE ASSOCIATION, *Appellee*.

Opinion filed February 24, 2006.

*Perry Warren*, of Goodland, for appellants.

*J. Ronald Vignery*, of Goodland, for appellee.

*Terry D. Bertholf*, of Hutchinson, for amicus curiae Kansas Cooperative Council.

Before HILL, P.J., GREENE, J., and BUKATY, S.J.

GREENE, J.: Charles Ihrig, Grace Ihrig, and Circle Bar Ranch Company (the Ihrigs) appeal the district court's order denying them shareholder access to the corporate books and records of Frontier Equity Exchange Association (Frontier), arguing that they met their statutory burden to show a proper purpose for such access. Although we affirm the district court's denial of an inspection for most of the Ihrigs' allegations, we conclude that the allegations of discounting established the possibility of mismanagement by a preponderance of evidence, requiring that we reverse the district court and remand for a determination of the proper scope of inspection.

*Factual and Procedural Background*

Headquartered in Goodland, Frontier is a nonprofit cooperative association composed of patrons engaged in the production of agricultural products, and is incorporated under the provisions of the Kansas Cooperative Marketing Act. See K.S.A. 17-1601 *et seq.* Frontier operates co-ops in Goodland, Brewster, Ruleton, and Bird City. Shares of Frontier's common stock may only be held or owned by producers of agricultural products and other cooperative

associations; such shareholders receive voting rights and accumulate permanent capital or equity within the co-op.

The three Ihrig shareholders are among approximately 1,400 Frontier shareholders and are located in Goodland. In June 2002, the Ihrigs made written demand pursuant to K.S.A. 17-6510 for access to Frontier's records that disclosed the salaries and benefits of all Frontier employees. The Ihrigs' letter stated:

"The proper purpose in this case is [we] are concerned . . . as to the diminution of profits of your corporation. [We] believe that a diminution of the profits of the corporation have most probably led to a decrease in the value of [our] stock . . . [and] [t]he purpose of the inspection is to determine whether or not the expenses of the corporation, in this case being salaries and benefits, are commensurate with the corporate profits. The parties request that this inspection be done by Charles Ihrig and Perry Warren, the attorney for all . . . named stockholders."

Frontier responded with a form that showed salaries, payroll taxes, and corporation costs for health insurance, salary continuation, group life insurance, and retirement for each of its four divisions. The figures represented the calculated totals for each division and were not broken down by individual employee. Unsatisfied with Frontier's response, in December 2002, the Ihrigs filed a petition with the district court, claiming Frontier denied them access to the books and records requested in the June 2002 letter, and seeking declaratory and injunctive relief under K.S.A. 17-6510.

While it is unclear what occurred in the interim, in August 2003, the Ihrigs filed an amended petition seeking further access to Frontier's "stock register, a list of stockholders, books of account, records of the proceedings of the stockholders and directors, and the corporation['s] other books and records and to make copies or extracts thereof." A month later, the district court granted the Ihrigs' motion to amend and ordered the Ihrigs to forward a new letter to Frontier listing the items requested in their amended pleadings. The Ihrigs complied and at some point Frontier forwarded financial "Statements of Operations" for the years 2001-2003.

In October 2003, Frontier offered Charles Ihrig and the Ihrigs' accountant an opportunity to meet with its outside auditor to dis-

cuss the co-op's financial position. In January 2004, Frontier held a meeting with its outside auditor present, but Ihrig appeared alone and apparently came away unsatisfied. The record does not disclose what, if any, steps the parties took to resolve the matter over the next 2 months, but in March 2004, Ihrig demanded additional records which Frontier declined to provide. Depositions were taken, and the matter proceeded to trial in December 2004.

In a ruling from the bench in February 2005, the district court found the Ihrigs were not entitled to inspect any records other than Frontier's stock ledger or list of stockholders and denied their request for additional inspections.

### Standard of Review

The parties agree that this appeal requires interpretation and application of statutory law, specifically K.S.A. 17-6510. To this extent, our standard of review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998). We note, however, that the district court conducted an evidentiary hearing and made findings of fact; our review of such findings is limited to determining whether they are supported by substantial competent evidence. *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003).

### Did the District Court Err in Determining that the Ihrigs Were Not Entitled to Inspect Additional Corporate Records Under K.S.A. 17-6510?

K.S.A. 2005 Supp. 17-6510 provides a right of any shareholder to demand inspection of a corporation's books and records "for any proper purpose," defined as one reasonably related to the interest of that shareholder.

"Any stockholder . . . upon written demand under oath stating the purpose thereof, shall have the right during the usual hours for business to inspect for any proper purpose, and to make copies and extracts from: (1) the corporation's stock ledger, a list of its stockholders, and its other books and records . . . . A proper purpose shall mean a purpose reasonably related to such person's interest as a stockholder." K.S.A. 2005 Supp. 17-6510(b).

"If the corporation . . . refuses to permit an inspection . . . the stockholder may apply to the district court for an order to compel such inspection. The district

court is hereby vested with exclusive jurisdiction to determine whether or not the person seeking inspection is entitled to the inspection sought . . . . Where the stockholder seeks to inspect the corporation's books and records, other than its stock ledger or list of stockholders, such stockholder shall first establish that . . . (3) the inspection such stockholder seeks is for a proper purpose." K.S.A. 2005 Supp.17-6510(c).

Corporate mismanagement constitutes a proper purpose entitling a shareholder to an evidentiary hearing to determine his or her right to inspect corporate records. *Arctic Financial Corp. v. OTR Express*, Inc., 272 Kan. 1326, 1330, 38 P.3d 701 (2002). A shareholder has the burden to show the possibility of mismanagement by a preponderance of the evidence. A shareholder may meet its burden by establishing, " 'through documents, logic, testimony or otherwise, that there are legitimate issues of wrongdoing.' " 272 Kan. at 1329 (quoting *Security First v. U.S. Casting & Development*, 687 A.2d 563, 568 [Del. 1997]). If the shareholder meets its burden, the court must determine the scope of the inspection to which the shareholder is entitled. 272 Kan. at 1330.

Many of the Ihrigs' complaints focused upon comparative financial performance and included excessive borrowing, excessive salaries, excessive fixed expenses, and generally poor financial performance. The district court's findings thoroughly address the evidence regarding these complaints and conclude that the Ihrigs failed to sustain their burden because the preponderance of the evidence established that these financial benchmarks were not "out of line in comparison with other Co-ops." Concluding that these findings are supported by substantial competent evidence in the record, the district court is affirmed in denying access to corporate records to investigate these particular allegations.

We remain troubled, however, regarding the Ihrigs' most grievous assertion, that Frontier has "lost touch with the fact that it is required to treat its patrons equally." Article VI of the corporation's bylaws states in relevant part: "The [General Manager] . . . shall . . . *conduct the business in such a way that all patrons will receive uniform treatment.*" (Emphasis added.) The Ihrigs argue that the district court's findings of fact support this allegation in stating:

"The evidence indicates that payments to stockholders annually in the form of patronage payments have essentially disappeared and have been replaced by the Co-op offering price discounts as a competitive tool."

The Ihrigs embellish their argument on appeal as follows:

"The evidence in the matter is that not all customers receive price discounts. . . . [T]he auditor of the defendant corporation, indicated in his testimony that there was no way his audit would determine what, if any, individuals were receiving preferred treatment at the defendant corporation. [He] further testified that the alteration of the grain tickets as set out herein at some point could affect the audit of the actual grain in the elevator. [He] further testified that the alteration of the grain tickets, in his estimation, was an error in judgment, if not outright dishonesty. This grain ticket alteration was done at the behest and with the blessing of the current Manager of the defendant corporation . . . . This intentional alteration of grain tickets so concerned the then controller of the defendant corporation, . . . that he quit his position with the defendant corporation and took portions of the books and records of the defendant corporation to the Sherman County Attorney. [The Controller] was not a short term employee at that time but had in fact been employed for eleven (11) years as both the Controller and General Manager."

The district court addressed in part this argument by stating that it was "the most compelling argument presented by plaintiff." The court concluded that discounting was quickly addressed by the Board and "would appear to be isolated." The Ihrigs emphasize on appeal that (i) they are unable to determine the extent and impact of such discounting without access to further records; (ii) the evidence supported more than an isolated incident; and (iii) the auditor cited by the district court admitted that there was no way his audit would determine the extent of preferred treatment at Frontier. The district court did not fully address these problems and may have ignored undisputed evidence that frequency and impact of discounting were unknown.

Our review of the testimony at trial reveals that Frontier's own witnesses were unanimous in their inability to quantify the extent and impact of both discounting in general and grain ticket alteration specifically. The auditor stated that he "could not tell on an individual basis" who is receiving a discount for fertilizer. With regard to grain ticket alteration, the auditor admitted, "I don't know the number, I don't know that I ever knew the total number

of customers. I do know that there was authorization . . . for one and it went a little farther then before it got stopped." A member of the board of directors admitted that "in the normal course of business I would say [the directors] probably [receive price discounts]. Another director was asked how many were involved in the grain ticket alteration scheme and he responded, "I don't know, I don't know." We conclude that the district court's conclusion that discounting in general appeared to be an "isolated" incident is not supported by substantial competent evidence..

For an appropriate interpretation and application of K.S.A. 17-6510, both parties look to guidance from our Supreme Court's opinion in *Arctic Financial Corp. v. OTR Express, Inc.*, 272 Kan. 1326, where the court discussed the appropriate legal standards for a shareholder's access to corporate records under K.S.A. 17-6510. The court quoted with approval the Delaware Supreme Court in holding:

" 'A stockholder's entitlement to inspection of corporate books and records depends on whether or not a credible basis to find probable wrongdoing on the part of corporate mismanagement has been established. At the trial of a summary proceeding . . . , the plaintiff must show the credible basis by a preponderance of the evidence. The actual wrongdoing itself need not be proved in [this] proceeding, however.' [Citation omitted.]

" ' . . . [A] stockholder has the burden of proof to demonstrate a proper purpose, but a stockholder is "not required to prove by a preponderance of the evidence that waste and [mis]management are actually occurring." The threshold for the plaintiff . . . is not insubstantial. Mere curiosity or a desire for a fishing expedition will not suffice. But the threshold may be satisfied by a credible showing, through documents, logic, testimony or otherwise, that there are legitimate issues of wrongdoing.' " 272 Kan. at 1329 (quoting *Security First v. U.S. Die Casting & Development*, 687 A.2d at 567-68).

Here, the Ihrigs established that an article of the corporate bylaws requiring "uniform treatment" of all patrons was violated by one or more incidents of discounting. Every shareholder has a legitimate interest in having the corporate business conducted in accordance with bylaws established by the corporation. Unless waived, and until repealed, bylaws are the continuing rule for the government of the corporation and its officers. *Schraft v. Leis*, 236 Kan. 28, 35, 686 P.2d 865 (1984). Granted, the Ihrigs were unable

to document how extensive this practice may have been, but this was not their burden in a preliminary proceeding to establish access to corporate records. Once the Ihrigs established that the practice occurred on more than one occasion, that the frequency or breadth of the practice could not be quantified, and that it was serious enough to have provoked a general manager's resignation in protest and a complaint to the county attorney, the *possibility* of mismanagement was established, and further access to corporate records should have been permitted for investigation of this allegation.

With regard to the Ihrigs' allegations of mismanagement by reason of discounting, we conclude that the district court erred in three regards: (i) the court overlooked or ignored undisputed evidence that the practice of discounting may have been more than "isolated"; (ii) the court's affirmative finding that price discounts were offered in lieu of stockholder dividends recognized the *possibility* of operation in contravention of the bylaws was a proper purpose to justify access to further corporate records under K.S.A. 17-6510 (as emphasized in *Arctic Financial*, the plaintiff in such matters need not prove *actual* wrongdoing, but must establish only the *possibility* of wrongdoing); and (iii) the court's findings of burden on and perils to the corporation if the records were to be produced was improper in determining whether plaintiffs met their burden; such burdens may be properly considered in determining the scope of inspection, but they should not be weighed in determining whether plaintiffs have shown the possibility of mismanagement. For these reasons, we reverse the district court and remand for further proceedings to determine the proper scope of the Ihrigs' inspection.

In summary, we affirm the district court's denial of the Ihrigs' request for inspection of documents related to allegations of excessive salaries, excessive borrowing, excessive expenses, and other allegations of poor comparative financial performance. We reverse the district court's refusal to permit an inspection for investigation of the Ihrigs' allegation of discounting in violation of corporate bylaws. In remanding for further proceedings, we caution that the district court has discretion under K.S.A. 2005 Supp. 17-6510(c) to determine a proper scope of inspection for the limited purpose

of further investigating the practice of discounting. The court may limit any disclosure of records to those reasonably related to this allegation, and the court may prescribe any limitations or conditions on the disclosure as deemed just and proper, including an order in limine prohibiting any publication of information contained in records to be disclosed. See K.S.A. 60-226(c).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.