NOT DESIGNATED FOR PUBLICATION

No. 121,609

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TRENTON WALDEN,
*Appellee*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JAMES R. FLEETWOOD, judge. Opinion filed February 5, 2021. Reversed and remanded with directions.

*Charles P. Bradley*, of Legal Services Bureau, Kansas Department of Revenue, for appellant.

*Stephen J. House*, of Wichita, for appellee.

Before BUSER, P.J., ATCHESON, J., and BURGESS, S.J.

PER CURIAM: Following a bench trial, the Sedgwick County District Court ruled that the Kansas Department of Revenue lacked sufficient grounds to suspend Trenton Walden's driver's license and, therefore, reversed the administrative suspension for a failed blood-alcohol test. KDOR has appealed. We find the district court disregarded undisputed evidence that Walden was less than 21 years old at the time of the incident leading to his suspension and, therefore, applied an erroneous statutory standard in reversing the suspension. The district court also erred in ruling the blood-alcohol test had been improperly administered to Walden. We reverse the district court and remand with directions to reinstate and affirm the suspension of Walden's driver's license.

1

Around midnight on June 23, 2018, Walden was driving with a passenger in west Wichita when his vehicle accelerated through an intersection and struck the curb of a median divider. The impact dislodged a wheel and disabled the vehicle. Sedgwick County Deputy Sheriff Kristopher Kite arrived and spoke with Walden about what happened. Deputy Kite noticed Walden's eyes were bloodshot and his breath smelled of alcohol. Walden admitted he had been drinking earlier in the evening.

Deputy Kite had Walden perform a series of field sobriety tests that are designed to gauge a person's ability to follow instructions and to perform tasks, such as walking heel-to-toe, requiring some physical dexterity. Typically, an individual who has consumed a significant amount of alcohol will have difficulty understanding and performing the tests, so they can be rough indicators of intoxication. In a journal entry filed after the trial, the district court discarded the field sobriety tests as evidence because Deputy Kite ostensibly did not adequately explain or demonstrate them for Walden and because Walden's performance of them was indistinctly depicted in a video recording of the encounter.

Deputy Kite detained Walden and took him to the Sedgwick County jail. After Deputy Kite read Walden a required advisory of rights, Walden elected to take a breath test measuring his blood-alcohol level. Deputy Kite testified that he watched Walden for 20 minutes before administering the test, as required by the testing protocols. He explained that if the test subject regurgitates or belches, that may introduce alcohol into his or her mouth, skewing the results. During the 20-minute period, Walden chewed his fingernails several times. Deputy Kite testified he told Walden to stop doing so. According to Deputy Kite, Walden did not belch or regurgitate before he took the breath test. Walden did not testify that he belched or regurgitated during the observation period.

No other evidence suggests he did. Deputy Kite testified the fingernail chewing would not have compromised the test because Walden did not have fresh alcohol on his hands. Deputy Kite's testimony describing the test protocols and their purpose was effectively undisputed. But Walden testified that Deputy Kite stepped away from the room where the breathalyzer was kept, and Deputy Kite is briefly beyond the frame of a video depicting the room and Walden's test. Deputy Kite testified he stood in the doorway and Walden was never out of his sight.

The breath test showed Walden had a blood-alcohol concentration of 0.158—well over the legal limit. Walden has not challenged the certification of the breathalyzer or Deputy Kite's training to operate the machine.

During the trial, Walden testified he was born in 1998 and would have been 20 years old at the time of the motor vehicle accident and his arrest. The testimony conforms to information Deputy Kite included on the notice of suspension, commonly known as a DC-27 form, he prepared and provided to Walden in June 2018.

Based on the DC-27 notice of suspension, Walden requested and received an administrative hearing. The hearing officer upheld the suspension. Walden timely filed a petition for review in the district court. Under K.S.A. 2019 Supp. 8-1020, the district court then conducts a de novo trial at which the petitioner must show the agency's suspension order to be erroneous. The district court held the trial in late May 2019 and filed its journal entry setting aside the suspension a week later. The KDOR has appealed the ruling. Throughout these proceedings, Walden has retained his driving privileges on a temporary license.

3

In reviewing a district court's decision in a license suspension proceeding, we ask whether the factual findings are substantially supported in the evidence. We give due deference to the district court's credibility findings and do not otherwise reweigh conflicting evidence. In turn, we determine if those findings warrant the district court's ultimate legal conclusion. We make an independent review of that point. *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1213-14, 442 P.3d 1038 (2019).

As directed in K.S.A. 2019 Supp. 8-1020(p), the Kansas Judicial Review Act, K.S.A. 77-601, et seq., governs proceedings in the district court and here on appellate review. We may examine the full appellate record, including the trial transcript, and consider materials and evidence that are undisputed. See K.S.A. 77-623 (appellate review under KJRA as in other civil actions); see also *Atkinson v. Herington Cattle Co.*, 200 Kan. 298, 311, 436 P.2d 816 (1968) (judgment for punitive damages following bench trial reversed because "the undisputed evidence on this point as a whole" failed to establish requisite malice or wantonness); *Ihrig v. Frontier Equity Exchange Ass'n*, 35 Kan. App. 2d 123, 130, 128 P.3d 993 (2006) (appellate court reverses in part because district court "overlooked or disregarded undisputed evidence" in conjunction with other errors); *Scott v. Kansas Dept. of Revenue*, No. 111,589, 2015 WL 2414393, at *5 (Kan. App. 2015) (unpublished opinion) (appellate court reverses district court and orders reinstatement of driver's license suspension because "undisputed evidence" established sufficient factual basis for law enforcement officer's initial traffic stop).

In the journal entry, the district court offers a terse and slightly cryptic description of its legal conclusions for setting aside the administrative suspension order. The district court clearly found Deputy Kite lacked sufficient grounds to detain Walden for testing. The district court also seemed to conclude the breath test results were compromised and, therefore, could not support the suspension. But the journal entry is less clear as to that

conclusion. In its appeal, the KDOR reads the journal entry to include both reasons for setting aside the suspension. We follow the agency's lead and examine each of them.

Under K.S.A. 8-1001(b), government agents may request blood-alcohol tests from drivers in specified circumstances. The relevant subsection of the statute in effect in June 2018 provided:

> "(b) *A law enforcement officer shall request a person to submit to a test or tests deemed consented to under subsection (a): (1) If, at the time of the request, the officer has reasonable grounds to believe the person* was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both, or to believe that the person was driving a commercial motor vehicle, as defined in K.S.A. 8-2,128, and amendments thereto, while having alcohol or other drugs in such person's system, or *was under the age of 21 years and was operating or attempting to operate a vehicle while having alcohol or other drugs in such person's system; and* one of the following conditions exists: (A) The person has been arrested or otherwise taken into custody for any violation of any state statute, county resolution or city ordinance; or (B) *the person has been involved in a vehicle accident or collision resulting in property damage* or personal injury other than serious injury." (Emphases added.) K.S.A. 2017 Supp. 8-1001(b)(1).

The term "reasonable grounds" used in K.S.A. 8-1001(b)(1) is the legal equivalent of probable cause. *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). In turn, probable cause defines a level of proof requiring facts sufficient to lead a prudent, reasonable person to believe a particular circumstance exists. See *State v. Berg*, 270 Kan. 237, 238, 13 P.3d 914 (2000); *State v. Boone*, 220 Kan 758, Syl. ¶ 9, 556 P.2d 864 (1976). An amendment to K.S.A. 2017 Supp. 8-1001(b) replacing the term "reasonable grounds" with "probable cause" went into effect on July 1, 2018. The amendment does not apply here and would not materially alter our analysis if it did.

5

In the journal entry, the district court failed to mention the undisputed evidence—testimony from Walden himself—that established he was 20 years old at the time of the motor vehicle accident. Because of Walden's age, Deputy Kite had the statutory authority to hold Walden for a breath test if he had reasonable grounds to believe Walden drove a motor vehicle with alcohol in his system and was involved in a property damage accident.

The undisputed evidence at trial showed Deputy Kite smelled alcohol on Walden's breath and Walden admitted drinking not long before the accident. A prudent person could reasonably conclude Walden probably had some amount of alcohol in his system at the time based on those facts alone. Likewise, the undisputed trial evidence established Walden told Deputy Kite he had been driving, and Walden's motor vehicle had sufficient damage that it could no longer be driven. Those facts would give a prudent person reason to believe Walden probably had been involved in an accident causing property damage. Nothing in the district court's factual findings called those circumstances into question.

Given the undisputed evidence, Deputy Kite had reasonable grounds to ask Walden to take a breath test. The field sobriety tests were superfluous, so the district court's decision to discount them made no legal difference. Apart from the field sobriety tests, the district court did not reject any other evidence related to the accident or Walden's condition at the scene. And by failing to consider that Walden was less than 21 years old, the district court applied those remaining facts to the wrong legal standard in K.S.A. 2017 Supp. 8-1001(b)(1). We, therefore, must conclude the undisputed facts do not support the district court's conclusion Deputy Kite lacked reasonable grounds to request a breath test from Walden; they necessarily establish just the opposite.

Turning to the district court's apparent decision to discard the breath test results ostensibly because Deputy Kite failed to comply with the testing protocols, we find a similar misconstruction of the facts. We infer the district court concluded Deputy Kite

6

either failed to watch Walden during the entire 20-minute period leading up to the testing or Walden contaminated the test results by chewing his fingernails. The trial evidence, however, supports neither possibility.

Walden bore the burden of proof at trial, and he introduced no evidence that he belched, regurgitated, or otherwise drew alcohol into his mouth during the observation period. Even assuming Deputy Kite were less than dutiful in closely monitoring Walden, the lack of diligence did not itself negate the test results. Similarly, Deputy Kite testified that based on his training, Walden's fingernail chewing would not have compromised the testing and explained why. Walden offered no contrary testimony from, say, an expert witness on the operation of breathalyzers or the science behind the protocols. Absent some conflicting evidence, the district court had no basis to disregard the test results.

This court has held that substantial compliance with the testing protocols is sufficient in driver's license suspension proceedings. *Martin v. Kansas Dept. of Revenue*, 38 Kan. App. 2d 1, 9-10, 163 P.3d 313 (2006); *Ruppe v. Kansas Dept. of Revenue*, No. 120,791, 2019 WL 5089723, at *2 (Kan. App. 2019) (unpublished opinion). The *Martin* court recognized that "[the] testing procedures substantially complied with the 'immediate presence' requirement for an alcohol breath test where the officer stepped out of the testing room several times for only a few seconds at a time, and the defendant does not suggest that his breath sample was contaminated or the Intoxilyzer malfunctioned." 38 Kan. App. 2d 1, Syl. ¶ 12. That application of the rule of substantial compliance is particularly appropriate here.

For the reasons we have explained, the district court erred in setting aside the KDOR order suspending Walden's driver's license. We reverse and remand with directions to the district court to reinstate and affirm the suspension and to enter those orders necessary to do so.